DUNIGAN ENTERPRISES, INC., & others[1] vs. DISTRICT
ATTORNEY FOR THE NORTHERN DISTRICT & others.[2]

Middlesex.    December 9, 1980. -- January 28, 1981.

Present: GREANEY, DREBEN, & NOLAN, JJ.

*Jurisdiction*, Enjoining criminal prosecution.  *Obscenity.  District Attor-
ney.  Search and Seizure.  Practice, Civil*, Preliminary injunction.

In an action by the owners and employees of an "adult bookstore" in which
the plaintiffs claimed that two searches and seizures of the entire in-
ventory of the bookstore by law enforcement officers were a ruse to put
the bookstore out of business and that the searches were conducted in a
manner which encroached on First Amendment rights, the judge did
not abuse his discretion in refusing to enjoin the district attorney from
prosecuting fifteen indictments charging the individual plaintiffs with
unlawful possession of obscene matter with intent to distribute and
from aiding law enforcement officers attached to his office in obtain-
ing search warrants for the premises operated by the plaintiffs even
though the plaintiffs were entitled to some relief against the prospect
of future indiscriminatory searches and seizures.  [257-260]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 31, 1979.

An application for preliminary relief was heard by
*O'Neil*, J.

PETITION filed in the Appeals Court on January 17, 1980.
The case was heard by *Perretta*, J.

*Regina L. Quinlan* for the plaintiffs.

*James W. Sahakian*, Assistant District Attorney (*Kevin C.
McLean*, Assistant District Attorney, with him) for the Dis-
trict Attorney for the Northern District.

---

[1] Towers News Stand, Inc., Paul H. Dunigan, Barry Strykowski, Steven
Wereskla.

[2] The mayor and police chief of the city of Lowell and three named
members of the city's police department.

GREANEY, J.   This appeal is brought under the second paragraph of G. L. c. 231, § 118, to determine whether a Superior Court judge erred in denying the plaintiffs preliminary relief which would have:   (1) enjoined the district attorney from prosecuting fifteen indictments charging the individual plaintiffs with unlawful possession of obscene matter with intent to distribute (G. L. c. 272, § 29); and (2) prohibited the district attorney from aiding law enforcement officers attached to his office in obtaining search warrants for premises operated by the plaintiffs.   We affirm the order.[3]

The judge in the Superior Court had the following picture before him.   The corporate plaintiffs own and operate a combination news stand, variety store, and "adult bookstore" on adjoining premises at Gorham Street in Lowell. The individual plaintiff, Paul H. Dunigan, is the president of one of the corporations; the other plaintiffs are employees of the businesses.   On three occasions in November, 1979, a plainclothes State police officer attached to the district attorney's office visited the premises, where he observed rows of books and magazines which depicted various sexual acts, a display case of sexual aids, films which were of an "explicit sexual nature," and thirty-four coin-operated booths for viewing X-rated films.   On these visits, the officer purchased a magazine, three novels, four films, and two video cassettes and watched portions of films in seven booths.   On November 15, 1979, the police sought and obtained a search warrant for the premises from a Superior

---

[3] The appeal docketed as 80-209 is from orders of a single justice of this court denying the plaintiffs' requests for modification of the order made in the Superior Court.   The single justice's orders were entered pursuant to a petition filed by the plaintiffs under the first paragraph of G. L. c. 231, § 118.   In denying relief, the single justice noted that "the relief [the plaintiffs] request is inappropriate and goes far beyond the holdings of [the applicable cases].   Nor is the relief they request required by cases decided under the First Amendment pertaining to protection against prior restraints and the chilling effects of censorship."   We shall dismiss the appeal from this order on the ground that it is moot in view of the action now being taken by the panel.

Court judge, based on the officer's eight-page affidavit which described in detail the contents of the materials seen and purchased.[4] The warrant authorized seizure not only of all copies of certain specified items but also other items not particularly described therein;[5] its execution led to confiscation of the adult bookstore's entire inventory.[6] Thereafter, civil *in rem* proceedings (G. L. c. 272, § 28C) were commenced against four books, and the indictments described above were returned against the individual plaintiffs.

Later in November, 1979, a second plainclothes State police officer assigned to the district attorney's office made two visits to the premises, where he purchased some materials and viewed others. On December 12, 1979, the police sought and obtained a second search warrant which permitted widespread seizure. Under its terms, the adult bookstore's entire inventory was again seized, on the following day.[7] No criminal or civil proceedings resulted from the second search. The plaintiffs filed their civil action on December 31, 1979, and claimed (insofar as pertinent to this appeal) that the searches were a ruse to put the bookstore out of business, that they were conducted in a manner which encroached on protected First Amendment rights, and that they would be repeated unless preliminary relief was granted.

---

[4] Among other things, the materials depicted acts of fellatio, cunnilingus, masturbation, natural and unnatural sexual acts between members of the same and different sexes, sexual contacts between humans and animals, exhibition of post-pubertal human genitals, pubic areas, and male genitals in a discernibly turgid state.

[5] These included all the books and business records of the corporate plaintiffs.

[6] We were informed at argument that some 1,350 cartons of materials weighing approximately twenty-two tons were removed from the premises.

[7] We were not told the weight of the materials seized but we are informed that the return on the warrant comprised approximately 180 typewritten pages.

A court of competent jurisdiction has the power to grant injunctive relief to prevent unlawful interference with a plaintiff's right to carry on business in general and to protect constitutional rights against actual and threatened violation. See *Kenyon* v. *Chicopee*, 320 Mass. 528, 531, 533 (1946); *Norcisa* v. *Selectmen of Provincetown*, 368 Mass. 161, 166-167 (1975); *Lankford* v. *Gelston*, 364 F.2d 197, 201-204 (4th Cir. 1966); *Lewis* v. *Kugler*, 446 F.2d 1343, 1350-1351 (3d Cir. 1971), and cases cited. This power may be exercised, in appropriate cases, to enjoin law enforcement authorities from pursuing "a deliberate pattern and practice of constitutional violations" (*Lewis* v. *Kugler*, 446 F.2d at 1350), and from enforcing a constitutional statute in an unconstitutional way. See generally cases discussed in 1 LaFave, Search and Seizure § 1.10 (1978); Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale, L. J. 143, 146 n.17 (1968). Respect for the executive branch of government, represented by the district attorney's office, and for legitimate law enforcement activities, however, requires that the power be exercised sparingly. "A . . . court should avoid unnecessarily dampening the vigor of a [law enforcement agency] by becoming too deeply involved in the [agency's] daily operations, both because of the vital public interests at stake, and because of the danger that the court could become enmeshed in endless time-consuming bickering and controversy." *Lewis* v. *Kugler*, 446 F.2d at 1351. Thus, the Supreme Judicial Court has recently reaffirmed the established principle as to this class of cases, which has been expressed as follows: "[S]uch relief should be denied unless it is clear 'that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute.'" *Bunker Hill Distrib., Inc.* v. *District Attorney*

*for the Suffolk Dist.*, 376 Mass. 142, 146 (1978), quoting from *Kenyon* v. *Chicopee*, 320 Mass. at 534.

The judge undoubtedly cast a critical eye on the breadth of the warrants, the fact that the first warrant was used to seize the bookstore's entire inventory, and the fact that, upon restocking and reopening, the store was subjected to a similar confiscation of its inventory under a second warrant. It could not have escaped the judge's attention that the authorities sought more than evidence by the warrants. Undoubtedly, they sought to shut the bookstore down permanently without following the procedure provided in G. L. c. 272, § 30, as appearing in St. 1974, c. 430, § 10, which permits a district attorney to obtain prompt preliminary and permanent injunctive relief against anyone who "disseminates or is about to disseminate any matter which is obscene."[8] See *District Attorney for the No. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391 (1976). While the plaintiffs had no protected right to pander prurient materials, they could assume that efforts to close suspect parts of their businesses would follow statutory channels. Thus the plaintiffs would have been entitled to some relief against the prospect of future indiscriminate searches and seizures as well as an order directing that all property seized be returned except the one or two copies of each item necessary for introduction in evidence at the trials.

The plaintiffs, however, have not pressed an appeal from the denial of such relief in the Superior Court.[9] They insist instead that they should have been granted the specific remedies requested in prayer four of the complaint, namely, injunctions staying prosecution of the indictments and re-

---

[8] The eighth paragraph of this statute provides that "[t]he procedures set forth in this section are in addition to criminal proceedings initiated under any provisions of the General Laws, and not a condition precedent thereto."

[9] Probably they did not do so because the judge denied requested relief along these lines "without prejudice," leaving the question open to reconsideration.

stricting the district attorney from assisting the police in obtaining future warrants for the premises. In declining this extraordinary relief, the judge could have accorded presumptive validity to both warrants based on the fact that their issuance had been blessed by one of his colleagues, and he could also have noted the probability that the plaintiffs had violated the obscenity statutes from the action of the grand jury in returning the indictments (as to the effect of grand jury action in obscenity cases, see *United States* v. *New Orleans Book Mart, Inc.*, 328 F. Supp. 136, 147 [E.D. La. 1971]). He might have considered it premature to test the sufficiency of the warrant in a civil proceeding for preliminary relief when a speedy remedy by way of a motion to suppress was available.[10] The judge could also have considered that there was no indication the indictments had been sought in bad faith, that the plaintiffs did not seriously contend the materials were anything but obscene, that the plaintiffs, despite a claim of irreparable economic harm, had resumed full-time business at the bookstore, and that, if the situation arose again, adequate relief could be framed short of enjoining prosecution of the indictments, by, for example, directing appropriate orders to responsible officials to correct the problem internally. See the remedies discussed in *Lewis* v. *Kugler*, 446 F.2d at 1351-1352. Moreover, the request to enjoin the district attorney from giving legal advice to the police with respect to future action against the premises was excessively broad.[11] If granted, it might constitute an unwarranted restriction on legitimate functions of a coordinate branch of State government.

---

[10] We were informed at oral argument that in April, 1980, a judge of the Superior Court found the warrant executed on November 15, 1979, to be constitutionally defective and ordered all the materials seized pursuant to its terms suppressed. These orders are presently under appeal by the Commonwealth to the Supreme Judicial Court. We do not consider this event dispositive of these cases or sufficient to render them moot.

[11] Such advice might have remedied past errors and led to proper actions under the provisions of G. L. c. 272, § 30.

Moreover, enforcement of this sort of injunction could tend to diminish respect for the processes of the court.

In summary, while we do not approve of the wholesale approach to enforcement taken by the prosecutorial authorities, we are satisfied, after a study of the record before us, in light of the criteria set forth in the *Kenyon* and *Norcisa* cases, that the judge did not abuse his discretion in denying the extraordinary relief sought by the plaintiffs in prayer four of the complaint.[12]

The appeal from the orders made by the single justice (No. 80-209) is dismissed. The order entered in the Superior Court denying a preliminary injunction under the fourth prayer of the complaint (the appeal in No. 80-263) is affirmed.

*So ordered.*

---

[12] Here it is useful to compare the asserted facts with those in *Dombrowski* v. *Pfister*, 380 U.S. 479 (1965), where intervention by a court of equity in law enforcement activities was held to be required. In that case, the plaintiffs offered to prove that the prosecutorial authorities threatened to enforce statutes against the plaintiffs without any expectation of securing valid convictions, that despite a summary vacation of search and arrest warrants by a State judge for lack of probable cause, the prosecutorial authorities continued to threaten new indictments and prosecutions based on the evidence ordered suppressed by the State judge, and that the prosecutorial authorities were engaging in a plan of arrests, seizures, and threats of prosecution for the sole purpose of harassing the plaintiffs in order to discourage them from attempting to vindicate important constitutional rights. *Id.* at 482, 487-489.