COCA-COLA BOTTLING COMPANY OF WISCONSIN, Plaintiff-Appellant and Cross-Respondent,

v.

Bronson C. LA FOLLETTE, Attorney General for the State of Wisconsin, Defendant-Respondent and Cross-Appellant.†

### Court of Appeals

*No. 81–719. Submitted on briefs December 9, 1981.*
*—Decided January 19, 1982.*
(Also reported in 316 N.W.2d 129.)

† Petition to review denied.

For the plaintiff-appellant and cross-respondent the cause was submitted on the briefs of *Cook & Franke, S.C.,* by *Francis R. Croak, Kevin J. Lyons* and *Jan E. Kearney,* of Milwaukee.

For the defendant-respondent and cross-appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James C. McKay, Jr.,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Randa, J.

DECKER, C.J.   This appeal concerns the applicability of secs. 100.16 and 945.01, Stats., to Coca-Cola's

"Real Caps" under-the-crown contest. We conclude that the promotion is not proscribed by either statute, reverse that portion of the judgment finding a violation of sec. 100.16, and affirm that portion finding no violation of ch. 945.

The material facts of this case are undisputed, and both parties moved the trial court for summary judgment. *See Powalka v. State Mutual Life Assurance Co.*, 53 Wis. 2d 513, 518, 192 N.W.2d 852, 854 (1972).

Coca-Cola Bottling Company of Wisconsin (Coca-Cola) manufactures and sells bottled beverages. On March 2, 1981, Coca-Cola began a sales promotion program known as the "Real Caps" contest in which consumers could win between 10¢ and $1,000, depending on what, if anything, was printed under the liner of specially marked Coca-Cola bottlecaps. The specially marked bottlecaps were available on bottles of Coca-Cola sold in retail outlets, or could be obtained without charge by mail or in person from Coca-Cola business offices. The odds of winning were posted at participating retail outlets, publicized in newspaper ads, and printed on cards accompanying each carton of specially capped Coca-Cola. All of the specially marked bottlecaps, those with and without something printed under the cap liner, were placed in one pool which was then randomly divided into two pools, one for free distribution and the other for actual capping of bottles to be sold to consumers.

Coca-Cola brought suit seeking declaration that the "Real Caps" contest did not violate secs. 100.15, 100.16, and ch. 945, Stats.[1]

---

[1] The Attorney General's office indicated to Coca-Cola that if Coca-Cola conducted the Real Caps contest, it would prosecute based on violation of these three statutes. Reference to sec. 100.15, Stats., was deleted from Coca-Cola's pleadings by stipulation of the parties when it became clear that the Attorney General would not prosecute for violation of sec. 100.15.

The Attorney General brought suit against Coca-Cola to enjoin the "Real Caps" contest, alleging violation of secs. 100.16 and 945.03(4), Stats. The actions were consolidated at the request of the parties, and hearings were held regarding preliminary injunctive relief. The trial court concluded that the contest violated secs. 100.16 and 939.05,[2] but not ch. 945, and at the request of the parties granted summary judgment, permanently enjoining Coca-Cola from proceeding with the contest because it violated secs. 100.16 and 939.05, and permanently enjoining the Attorney General from enforcing ch. 945 regarding the contest.

Coca-Cola appeals, contending that the "Real Caps" contest does not violate sec. 100.16, Stats. The Attorney General cross appeals on two grounds:

(1) the contest violates ch. 945, Stats., as well as sec. 100.16; and

(2) the Attorney General cannot be restrained from enforcing criminal laws.

## CHAPTER 945, STATS.

Wisconsin's substantive law on lotteries is governed by art. IV, sec. 24, of the Wisconsin Constitution. Before 1965, this provision stated, "The legislature shall never authorize any lottery, or grant any divorce." In 1965, this provision was amended to remove the constitutional obstacle to certain forms of lotteries:

The legislature shall never authorize any lottery, or grant any divorce. Except as the legislature may provide

---

[2] The parties conceded that in this case sec. 100.16, Stats., is directed against retailers whose ultimate sale to consumers is accompanied by chance of a prize. The sale by Coca-Cola to retail outlets is not accompanied by chance of a prize and would not fit sec. 100.16. Because Coca-Cola devised and makes possible the scheme, however, the case proceeded under the assumption that sec. 939.05 makes it subject to liability as party to a crime.

otherwise, to listen to or watch a television or radio program, to fill out a coupon or entry blank, whether or not proof of purchase is required, or to visit a mercantile establishment or other place without being required to make a purchase or pay an admittance fee does not constitute consideration as an element of a lottery.[3]

The constitutional modification was followed by the enactment of sec. 945.01 (2), Stats.:

(2) Lottery. (a) A lottery is an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill.

(am) "Lottery" does not include bingo or a raffle as defined in s. 163.03 if conducted under ch. 163.

(b) 1. "Consideration" in this subsection means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant, but does not include any advantage to the promoter or disadvantage to any participant caused when any participant learns from newspapers, magazines and other periodicals, radio or television where to send his name and address to the promoter.

2. In any game, drawing, contest, sweepstakes or other promotion, none of the following shall constitute consideration under this subsection:

a. To listen to or watch a television or radio program.

---

[3] This provision has been amended twice since 1965, but remains essentially the same in pertinent part:

Section 24. The legislature shall never authorize any lottery or grant any divorce

. . . .
. . . .

(3) Except as the legislature may provide otherwise, the following activities do not constitute consideration as an element of a lottery:

(a) To listen to or watch a television or radio program

(b) To fill out a coupon or entry blank, whether or not proof of purchase is required

(c) To visit a mercantile establishment or other place without being required to make a purchase or pay an admittance fee.

b. To fill out a coupon or entry blank which is received through the mail or published in a newspaper or magazine, if facsimiles thereof or handwritten and other informal entries are acceptable or if no purchase is required.

c. To furnish proof of purchase if the proof required does not consist of more than the container of any product as packaged by the manufacturer, or a part thereof, or a facsimile of either.

d. To send the coupon or entry blank and proof of purchase by mail to a designated address.

e. To fill out a coupon or entry blank obtained and deposited on the premises of a bona fide trade fair or trade show defined as an exhibition by 5 or more competitors of goods, wares or merchandise at a location other than a retail establishment or shopping center or other place where goods and services are customarily sold; but if an admission fee is charged to such exhibition all facilities for obtaining and depositing coupons or entry blanks shall be outside the area for which an admission fee is required.

f. To fill out a coupon or entry blank obtained and deposited on the premises of a mercantile establishment if no admission fee or purchase is required.

At common law, there are three elements of a lottery —a prize, chance, and a consideration. *Kayden Industries, Inc. v. Murphy,* 34 Wis. 2d 718, 724–25, 150 N.W. 2d 447, 450 (1967). The parties to this appeal agree that the "Real Caps" contest exhibits two of the elements, a prize and chance, but dispute the existence of consideration.

Section 945.01 (2) (b) 2.c., Stats., provides that it is not consideration "[t]o furnish proof of purchase if the proof required does not consist of more than the container of any product as packaged by the manufacturer, or a part thereof, or a facsimile of either." The Attorney General concedes that the specially marked bottlecaps which must be furnished for entry in the lottery are proof of purchase consisting of no more than part of

the beverage container as packaged by Coca-Cola. He argues, however, that the statute requires Coca-Cola to accept a facsimile in lieu of a bottlecap, which it asserts Coca-Cola does not do. The Attorney General asserts that Coca-Cola only accepts bottlecaps, and the fact that some are available free of charge does not change the fact that they are Coca-Cola bottlecaps, and not facsimiles.

Assuming *arguendo* that this section of the statute requires acceptance of facsimiles,[4] we reject the Attorney General's argument. He implies that a facsimile ceases to be a facsimile when it is undistinguishable from the original. In so doing the distinction used in the statute is ignored. An original proof of purchase is defined in the statute as a container (or part thereof) of a product *as packaged* by the manufacturer. Bottlecaps used in the actual packaging of the product are original proofs of purchase within this definition; bottlecaps never affixed to bottles or otherwise used to package the product are facsimiles thereof. The distinction made crucial by the plain meaning of the statute is not whether the original proof of purchase and the facsimile are made differently, but whether they are used differently by the manufacturer. Here, one class of bottlecaps is used as

---

[4] We express no opinion on this question, legitimately raised by Coca-Cola in its briefs, because its resolution is not dispositive of this appeal. As indicated in the immediately preceding text, if we assume that acceptance of facsimiles is not required, the Attorney General cannot enforce the statute. As indicated in the text immediately following, however, even if we assume acceptance of facsimiles is required, the Attorney General cannot enforce the statute because we conclude that Coca-Cola accepts facsimiles in this contest. We recommend legislative attention to this section, however, if the legislature intended it to require acceptance of facsimiles. *Cf.* sec. 945.01(2)(b)2.b. ("if facsimiles . . . are acceptable or if no purchase is required.").

part of the container of a product as packaged, and the other is not. The latter are facsimiles. We affirm that portion of the trial court's judgment finding no violation of ch. 945, Stats.

## SECTION 100.16, STATS.

The trial court found that the "Real Caps" contest violated sec. 100.16, Stats.,[5] which states:

*Selling with pretense of prize.* No person shall sell or offer to sell anything whatever, by the representation or pretense that a sum of money or something of value, which is uncertain or concealed, is inclosed within or may be found with or named upon the thing sold, or that will be given to the purchaser in addition to the thing sold, or by any representation, pretense or device, by which the purchaser is informed or induced to believe that money or something else of value may be won or drawn by chance by reason of such sale.

Coca-Cola argues that this section was impliedly repealed by the amendment to Wis. Const. art. IV, sec. 24, codified in 945.01(2), Stats. The Attorney General argues that the statute is not affected by the amendment because it regulates sales, not lotteries, and that the statute proscribes the "Real Caps" contest as a sales promotion regardless of whether *as a contest* it does not violate Wisconsin's lottery law. This result, the Attorney General claims, is mandated by literal application of sec. 100.16, which is claimed to be unambiguous, precluding judicial construction.

Section 100.16, Stats., contains all of the elements of a lottery—a prize, chance, and a consideration. The consideration proscribed by sec. 100.16 is sale by a retailer.

---

[5] This violation was as party to the crime of selling by false pretenses. *See* note 2, *supra*.

Section 945.01 (2) (b) 2.c. removes from the definition of consideration the furnishing of proof of purchase. It is difficult to perceive how a consumer could furnish proof of purchase without first purchasing the product. A literal application of the state's argument would result in the underlying sale of the product being valid per sec. 945.01 (2), enacted pursuant to Wis. Const. art. IV, sec. 24, but invalid per sec. 100.16. Ambiguity can result from the interaction of two separate statutes as well as from the interaction of the various words and structure of a single statute. *State v. Kenyon*, 85 Wis. 2d 36, 49, 270 N.W.2d 160, 166 (1978). A court may construe a statute whose meaning is clear if a literal application would lead to an absurd or unreasonable result. *Kayden Industries, supra*, 34 Wis. 2d at 732, 150 N.W.2d at 454. We consider that literal application of the statutes as urged by the Attorney General leads to an absurd and unreasonable result, and reject application of sec. 100.16 to a scheme legitimate per sec. 945.01 (2) (b) 2.c. We reverse that portion of the trial court's judgment finding a violation of sec. 100.16 and enjoining operation of the "Real Caps" contest.

## INJUNCTIVE RELIEF

The trial court found no violation of ch. 945, Stats., and permanently enjoined the Attorney General from enforcing ch. 945 against Coca-Cola "in connection with the 'Real Caps' promotion."[6] The Attorney General argues in his cross-appeal that the trial court was without jurisdiction to enter a judgment enjoining the Attorney General from enforcing the criminal statutes. Because we have upheld that portion of the judgment finding no

---

[6] Enforcement of a scheme violating sec. 945.01 (2), Stats., is provided for in sec. 945.02 (3), which makes conducting of a lottery a Class B misdemeanor.

violation of ch. 945, we address the question of injunctive relief.

It is a general rule that a court of equity will not take jurisdiction to enjoin enforcement of the criminal law, . . . [but] where property rights are being destroyed or threatened with destruction by action under a void ordinance or law, courts of equity will take jurisdiction to prevent the injury or destruction in a proper case. *Benz v. Kremer,* 142 Wis. 1, 3–4, 125 N.W. 99, 100 (1910). *Accord, Pinkerton v. Buech,* 173 Wis. 433, 435, 181 N.W. 125, 126 (1921).[7]

The Attorney General agrees, but contends that exercise of this jurisdiction is proper only where the destruction of property rights amounts to "the virtual elimination of the litigant's occupation, livelihood or business." We disagree.

So long as the property right threatened with destruction is not so trivial that equity will not, on general principles, interfere, we believe it is proper for a court to take jurisdiction to enjoin unlawful enforcement of a statute. *See generally Sentinel-News Co. v. City of Milwaukee,* 212 Wis. 618, 250 N.W. 511 (1933); *Milwaukee Electric Railway & Light Co. v. Bradley,* 108 Wis. 467, 84 N.W. 870 (1901).

The record in this case reflects that threatened enforcement of ch. 945, Stats., caused some retailers to cancel orders for Coca-Cola products, depriving Coca-Cola

---

[7] Courts will also exercise jurisdiction to enjoin enforcement of an ordinance or law which, although valid, is not applicable to the party seeking injunctive relief. *See Sentinel-News Co. v. City of Milwaukee,* 212 Wis. 618, 621, 250 N.W. 511, 512 (1933) (ordinance violation). The Attorney General does not challenge this extension of the exception stated in *Benz v. Kremer,* or that, as reflected in the quote from *Benz v. Kremer,* identical principles govern attempts to enjoin either statutes or ordinances.

of its normal sales volume with these customers. The record also shows, and the Attorney General alleged in his pleadings, that in general the contest had been successful in promoting increased sales of Coca-Cola products. Enforcement of ch. 945 would deprive Coca-Cola of this increased sales volume. Coca-Cola expended substantial amounts of money to promote the contest that we have determined to be lawful. and the record reflects that Coca-Cola would have to expend substantial sums to withdraw the promotion from the public as a result of enforcement of ch. 945. We conclude that the wrongful enforcement of ch. 945 would result in sufficient destruction to property for the trial court to exercise its powers of equity. We affirm its grant of a permanent injunction.

*By the Court.*—Judgment reversed in part, affirmed in part.