**Earl RATHKE, d/b/a Colorado Collectors Center, a sole proprietorship, Klaus Degler, d/b/a Rocky Mountain Coin & Stamp, a sole proprietorship, Jackie D. Willis, Inc., d/b/a Denver Gold & Silver Exchange, a Colorado corporation, Appellants,**

v.

**J. D. MacFARLANE, Attorney General of the State of Colorado, Dale Tooley, District Attorney for the 2nd Judicial District of the State of Colorado, and Arthur G. Dill, Chief of Police of the City and County of Denver, Appellees.**

No. 81SA263.

Supreme Court of Colorado,
En Banc.

July 19, 1982.

Sherman & Sherman, P.C., David M. Sherman, Edward H. Sherman, Denver, for appellants.

R. Dale Tooley, Dist. Atty., Second Judicial District, J. D. MacFarlane, Atty. Gen., Brook Wunnicke, Chief Appellate Deputy Dist. Atty., J. Stephen Phillips, First Asst. Atty. Gen., John Olsen, Deputy Dist. Atty., Denver, for appellees.

ERICKSON, Justice.

This is an appeal from the denial of a motion for a preliminary injunction by which the appellants, Rathke *et al.*, (Rathke) sought to enjoin the appellees, the Attorney General of the State of Colorado *et al.*, from enforcing section 18–16–101 *et seq.*, C.R.S.1973 (1978 Repl. Vol. 8) (1981 Supp.). The trial court denied the motion on the ground that the appellants failed to establish the probability that the challenged statute was unconstitutional beyond a reasonable doubt. We affirm.

I.

The facts of this case are undisputed. The appellants are merchants in the City and County of Denver who are engaged in the business of buying and selling precious metals and stones, including gold and silver bullion, coins and currency, jewelry, and similar articles. They operate their businesses by buying such articles from members of the general public. In most instances, no purchase is consummated unless and until the appellants have simultaneously entered into an agreement, via teletype or other instantaneous communication method, for the resale of the article to a third party. Both purchases and resales are based upon the then-prevailing market rate for the metallic content of the item purchased, which is subject to hourly, daily, and monthly fluctuations. By teletype trade association rules, the sales are contingent upon delivery of the article to the new purchaser within 48 hours following the teletype sales commitment. Under this method, the appellants obtain a fixed profit on each article, which is the difference between the price at which they buy and the price at which they simultaneously commit to sell the article. As a result of this procedure, the appellants need not speculate on the precious metal market fluctuations but are able to immediately ascertain the amount of profit on each article bought and sold.

On May 22, 1981, section 18–16–101 *et seq.*, C.R.S.1973 (1978 Repl. Vol. 8) (1981 Supp.), was enacted which regulates appellants' business by imposing holding period and recording requirements on certain purchases of "valuable articles." The legislative declaration set forth in section 18–16–101 provides:

"The general assembly hereby finds and determines that illicit traffic in stolen valuable articles is encouraged by the absence of any required record-keeping system by persons purchasing such valuable articles. The general assembly further finds that law enforcement officials are hindered in the identification and recovery of stolen valuable articles, and that law enforcement officials are hindered in the discovery and identification of persons selling stolen valuable articles due to the absence of such a required record-keeping system. Accordingly, it is the intent of the general assembly, by enacting this article, to aid law enforcement officials in the discovery and identification of sellers of stolen valuable articles and in the identification and recovery of stolen valuable articles by providing a mandatory record-keeping and reporting system by purchasers and by providing a holding period during which time such

articles shall not be disposed of or altered in any manner. Local governments may adopt ordinances more strict than the provisions of this article."

Subsections 18–16–102(7)(a) and (b) define "valuable article" as:

"(a) 'Valuable article' means any tangible personal property consisting, in whole or in part, of precious or semiprecious metals or stones, whether solid, plated, or overlaid, including, but not limited to, household goods, jewelry, United States commemorative medals or tokens, and gold and silver bullion.

"(b) 'Valuable article' shall also include foreign currency when purchased for more than its face value or foreign currency exchange value."

The substantive provisions in the statute require purchasers of valuable articles to secure identification from the sellers before any purchase is made (section 18–16–103), and to record detailed information regarding each purchase in a permanent register which is subject to inspection by peace officers at any reasonable time (section 18–16–105). Section 18–16–106 requires purchasers to hold each valuable article, with certain exceptions, for thirty days from the date of purchase, and permits law enforcement officers to inspect the article at any time during the thirty-day period. In addition, section 18–16–107 requires purchasers to provide written records and reports of purchase transactions to local law enforcement agencies on a weekly basis, and section 18–16–104 prohibits the purchase of any valuable article from any person under eighteen years of age. Failure to comply with any of the provisions in the statute constitutes a class five felony.

On May 26, 1981, Rathke filed a complaint for a declaratory judgment, pursuant to C.R.C.P. 57, challenging the constitutionality of section 18–16–101 et seq. Concurrently, Rathke filed a motion for a temporary restraining order and a preliminary injunction to enjoin the threatened enforcement of the statute by the appellees. Rathke maintained that the statute would force him out of business primarily because the record-keeping requirements were prohibitively burdensome and because the thirty-day holding period would prevent him from buying gold and silver items in the usual fashion. The specific constitutional challenges asserted in the complaint included that: (1) the statute was unconstitutionally vague and indefinite; (2) it impermissibly sanctioned general and warrantless police searches of business premises, inventories, and records; (3) it violated due process as a taking of property without just compensation; (4) it was arbitrary, capricious, and confiscatory legislation in that it destroyed or impaired the appellants' property, livelihood, and businesses; and (5) it interfered with federal legislation and intruded into an area of exclusive jurisdiction of the federal government. At a hearing on May 29, 1981, the parties stipulated to proceed on the motion for a preliminary injunction.

The trial court determined that a preliminary injunction would issue only upon a showing that immediate irreparable injury would occur without injunctive relief; that there was no plain, speedy, and adequate remedy at law; and that there would be a reasonable probability of success on the merits of the case at trial. Because the court found that the bookkeeping regulations incident to section 18–16–101 et seq. were burdensome and that the holding requirement would financially impair Rathke's business operations, it concluded that a showing of immediate, irreparable injury was made.[1] Moreover, the court

---

1. The trial court concluded, however, that the appellants would not be driven out of business under the new statute, as indicated by the effects of the holding period and record-keeping requirements in California under a similar law:
"[T]he evidence is that the parties in California are able to operate under this law. I find the differences between the laws to be insignificant. And although Colorado's law does not depend upon the validity of the California law, the experience thereunder is indicative as to whether or not the classification is in fact arbitrary and the means and provisions thereof excessive. I therefore conclude that this does not require destruction of plaintiffs' business to operate under the new statute."

found that Rathke had no plain, speedy, and adequate remedy at law with respect to the protection of his constitutional rights. However, after recognizing that the test of unconstitutionality of a statute requires proof beyond a reasonable doubt, the trial court concluded that Rathke had not established the probability that the statute was unconstitutional. Accordingly, after a second hearing on June 2, 1981, the court denied the motion for a preliminary injunction.

Thereafter, Rathke filed a motion for reconsideration or, in the alternative, for a new trial. Following a hearing on June 18, 1981, the trial court denied the motion. On the same date, the court also denied Rathke's motion for a stay of judgment and for an injunction pending appeal. Rathke thereafter appealed the denial of the motion for a preliminary injunction to this Court. During the pendency of the appeal, Rathke filed a notice to set the claims for a declaratory judgment and a permanent injunction for a trial on the merits. In response, the appellees filed a notice of non-appearance for the setting on the ground that the trial court lacked continuing jurisdiction in the case because an appeal of the order denying the preliminary injunction had been perfected. Rathke thereafter filed a motion to set the matter for trial and, at a hearing on November 5, 1981, the trial court denied the motion. Consequently, during the pendency of this appeal, no trial has been held on the merits of this case.[2] Our review in this appeal is there-

fore limited to a determination of whether the district court abused its discretion in denying the motion for a preliminary injunction.[3] For the reasons expressed in this opinion, we affirm the decision of the trial court.

## II.

■ Preliminary injunctive relief is an extraordinary remedy designed to protect a plaintiff from sustaining irreparable injury and to preserve the power of the district court to render a meaningful decision following a trial on the merits. *See Mid-Fla Coin Exchange v. Griffin*, 529 F.Supp. 1006 (M.D.Fla.1981). Because equitable relief in the nature of an injunction constitutes a form of judicial interference with continuing activities, the courts have generally been reluctant to grant such relief where "the actions complained of are those of departments of the executive and legislative branches of government, in the exercise of their authority." *Plaquemines Parish Commission v. Perez*, 379 So.2d 1373 (La.1980). The constitutional basis for judicial deference in this regard is the doctrine of separation of powers, which serves to restrain one branch of government from usurping or restraining the proper exercise of the powers of another branch. *See Colo. Const.* Art. III; *Colorado State Board of Medical Examiners v. District Court*, 138 Colo. 227, 331 P.2d 502 (1958). Consequently, courts repeatedly have adopted a strong presumption against enjoining pending or

---

**2.** Accordingly, the trial court did not make a final adjudication on the merits as to the constitutionality of section 18–16–101 *et seq.* and recognized that a final adjudication would not occur until "a full plenary trial upon the issues or upon the application for permanent injunction which may be sought at that time."

**3.** The merits of the particular constitutional challenges to the statute should be heard in the first instance at the trial court level and should not be prejudged upon review of a preliminary injunction application. *See Combined Communications Corp. v. Denver*, 186 Colo. 443, 528 P.2d 249 (1974). We take this opportunity, however, to disapprove the trial court's denial of Rathke's motion to set the matter for trial pending the appeal of the denial of his motion for a preliminary injunction. We can perceive

no good reason to deprive Rathke or persons similarly situated from their rights to a trial on the merits based on their applications for a declaratory judgment and a permanent injunction. Accordingly, we hold that the pending appeal in this case did not deprive the trial court of jurisdiction to proceed in a timely and orderly fashion with the declaratory judgment and permanent injunction proceedings. *But see People v. District Court*, 631 P.2d 1132 (Colo.1981) (the trial court lacked jurisdiction to enter an order dismissing the criminal charges pending against a defendant where the court granted the defendant's motion to dismiss before the appellate court's mandate on a rule to show cause in the same case was issued).

ng_ef**652**

threatened criminal prosecutions, and the prevailing rule is that a court of equity may not generally enjoin the enforcement of criminal statutes or ordinances whose constitutionality has been challenged. *See, e.g., Johnson v. District Court*, 195 Colo. 169, 576 P.2d 167 (1978); *Downstate Stone Co. v. United States*, 651 F.2d 1234 (7th Cir. 1981); *Coca-Cola Bottling Co. v. LaFollette*, 106 Wisc.2d 162, 316 N.W.2d 129 (1982); *Murphy v. McNamara*, 36 Conn.Sup. 183, 416 A.2d 170 (1979); *Anderson v. Brown*, 13 Ohio St.2d 53, 233 N.E.2d 584 (1968); *State ex rel. Hensley v. Eubanks*, 368 P.2d 253 (Okla.Cr.1962); *Board of Regents v. City of Tempe*, 88 Ariz. 299, 356 P.2d 399 (1960); *Cicchetti v. Anderson*, 90 R.I. 76, 155 A.2d 64 (1959).

There are, however, limited instances where a court in its discretion may grant injunctive relief from a threatened criminal prosecution, although judicial respect for the executive branch of government and for legitimate law enforcement activities requires that the power be exercised conservatively. *See Dunigan Enterprises, Inc. v. District Attorney*, —— Mass.App. ——, 415 N.E.2d 251 (1981). The United States Supreme Court has determined that an injunction by a federal court against pending or threatened state court criminal prosecutions is permissible only upon a showing of prosecutorial bad faith or harassment.[4] *See*

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Beal v. Missouri Pacific R. Co.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941). Similarly, federal courts of equity have recognized certain limited exceptions justifying a preliminary injunction against the enforcement of a federal criminal statute. *See, e.g., Hynes v. Grimes Packing Co.*, 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231 (1949) (injunction permissible against enforcement of allegedly invalid federal regulations that would deprive plaintiffs of property rights); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912) (injunction against enforcement of criminal statute permissible where statute allegedly is unconstitutional and officer is exceeding or abusing his authority); *Dobbins v. Los Angeles*, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904) (injunction permissible to restrain the arbitrary and discriminatory exercise of the police power which results in a taking of property without due process of law and an impairment of property rights). *See generally Downstate Stone Co. v. United States, supra.*

State equity courts will enjoin the enforcement of a state statute or law in situations where property rights or fundamental constitutional rights are being destroyed or threatened with destruction.[5] In

---

**4.** The doctrine of federal non-intervention is based on principles of federalism and comity which limit federal intrusions into state criminal proceedings except in exceptional circumstances. *Wright, The Law of Federal Courts*, § 52A (3d ed. 1976). *See also Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The doctrine is codified in 28 U.S.C. § 2283 (1976), which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

**5.** *See, e.g., Dunigan Enterprises, Inc. v. District Attorney*, —— Mass.App. ——, 415 N.E.2d 251 (1981) (injunctive relief proper to prevent unlawful interference with right to carry on business in general and to protect constitutional

rights against actual and threatened violation); *Bunker Hill Distributing, Inc. v. District Attorney*, 376 Mass. 142, 379 N.E.2d 1095 (1978) (injunctive relief against criminal prosecution proper where a substantial right of plaintiff will be impaired to a material degree); *Pitchess v. Superior Court*, 2 Cal.App.3d 644, 83 Cal.Rptr. 35 (1970) (injunctive relief proper to enjoin prosecution of criminal offense where statutes are unconstitutionally applied to suppress First Amendment rights guaranteed to all citizens); *Anderson v. Brown*, 13 Ohio St.2d 53, 233 N.E.2d 584 (1968) (where enforcement of ordinance will infringe upon property rights and do irreparable injury to one's business, equity will give relief through an injunction); *Kenyon v. City of Chicopee*, 320 Mass. 528, 70 N.E.2d 241 (1946) (equity may enjoin repeated arrests and prosecutions of Jehovah's Witnesses for distributing handbills advertising religious lectures). *See also Coca-Cola Bottling Co. v. La-Follette*, 106 Wis.2d 162, 316 N.W.2d 129

*Johnson v. District Court, supra,* we concluded that an injunction may issue against a threatened criminal prosecution in appropriate circumstances to protect property rights:

> "While ordinarily criminal prosecutions will not be restrained even under an invalid statute, a civil action will lie in exceptional circumstances that make an injunction necessary to effectually protect property rights." 195 Colo. at 171, 576 P.2d at 168 (quoting *Hynes v. Grimes Packing Co.,* 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231 (1949)).

*See also Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287 (1968). It is therefore clear that a court's power to award injunctive relief from a threatened criminal prosecution in this state must be exercised sparingly. The imminence of a criminal prosecution, even though alleged to be in violation of constitutional guarantees, does not alone warrant relief in the nature of a preliminary injunction. *See Johnson v. District Court, supra; Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Beal v. Missouri Pacific R. Co., supra.*

A person affected by a criminal statute need not, however, necessarily take the risk of prosecutions, fines, imprisonment, loss of property, or loss of profession in order to secure adjudication of his rights. Relief in the nature of a declaratory judgment will be afforded in appropriate circumstances to those persons who claim uncertainty and insecurity with respect to their rights under a penal statute or law. *See* C.R.C.P. 57; *Colorado State Board of Optometric Examiners v. Dixon, supra.* But in view of its extraordinary nature, preliminary injunctive relief to prevent the enforcement of a criminal statute is not justified except in the most exceptional circumstances. Therefore, we conclude that before a trial court may enjoin the enforcement of a criminal statute in a preliminary injunction proceeding, the moving party

must establish, as a threshold requirement, a clear showing that injunctive relief is necessary to protect existing legitimate property rights or fundamental constitutional rights. *Accord, Downstate Stone Co. v. United States, supra; Dunigan Enterprises, Inc. v. District Attorney, supra; Plaquemines Parish Commission v. Perez, supra.*

### III.

The granting or denial of a preliminary injunction is a decision which lies within the sound discretion of the trial court. *Crosby v. Watson,* 144 Colo. 216, 355 P.2d 958 (1960); *Allen v. Denver,* 142 Colo. 487, 351 P.2d 390 (1960); *American Television and Communications Corp. v. Manning* (Court of Appeals No. 81CA0601, announced June 17, 1982); *Macleod v. Miller,* Colo. App., 612 P.2d 1158 (1980). However, injunctive relief should not be indiscriminately granted. *Crosby v. Watson, supra.* Rather, it should be exercised sparingly and cautiously and with a full conviction on the part of the trial court of its urgent necessity. Therefore, once the trial court has determined that the threshold requirement has been met for the issuance of a preliminary injunction to enjoin the enforcement of a criminal statute, it must then determine whether the moving party has established the prerequisites for preliminary injunctive relief pursuant to C.R.C.P. 65(a). In exercising its discretion, the trial court must find that the moving party has demonstrated:

(1) a reasonable probability of success on the merits, *Combined Communications Corp. v. Denver,* 186 Colo. 443, 528 P.2d 249 (1974); *O'Connell v. Colorado State Bank,* 633 P.2d 511 (Colo.App.1981);

(2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief, *American Investors Life Insurance Co. v. Green Shield Plan, Inc.,* 145 Colo. 188, 358 P.2d 473 (1960);

(1982); *Plaquemines Parish Commission v. Perez,* 379 So.2d 1373 (La.1980); *Murphy v. McNamara,* 36 Conn.Sup. 183, 416 A.2d 170

(1979); *City of Corpus Christi v. Gilley,* 458 S.W.2d 124 (Tex.1970); *State ex rel. Hensley v. Eubanks,* 368 P.2d 253 (Okla.Crim.1962).

(3) that there is no plain, speedy, and adequate remedy at law, *American Investors Life Insurance Co. v. Green Shield Plan, Inc., supra;*

(4) that the granting of a preliminary injunction will not disserve the public interest, *American Television and Communications Corp. v. Manning, supra;*

(5) that the balance of equities favors the injunction, *Combined Communications Corp. v. Denver, supra;* and

(6) that the injunction will preserve the status quo pending a trial on the merits, *Combined Communications Corp. v. Denver, supra; Graham v. Hoyl,* 157 Colo. 338, 402 P.2d 604 (1965); *Rivera v. Civil Service Commission,* 34 Colo.App. 152, 529 P.2d 1347 (1974).

*See generally Macleod v. Miller, supra;* Leubsdorf, *The Standard for Preliminary Injunctions,* 91 Harv.L.Rev. 525 (1978); 11 *Wright and Miller, Federal Practice and Procedure,* §§ 2947–48 (1973). As prerequisites, these criteria must be satisfied prior to granting preliminary injunctive relief to enjoin the enforcement of a criminal statute. If each criterion cannot be met, injunctive relief is not available. *Accord, Otero Savings and Loan Assoc. v. Federal Reserve Bank,* 665 F.2d 275 (10th Cir. 1981); *Downstate Stone Co. v. United States, supra; Mid-Fla Coin Exchange, Inc. v. Griffin, supra.*

In this case, the appellants assert that the trial court should have focused on the interplay of all factors relevant to the grant or denial of a preliminary injunction instead of requiring the moving party to establish a reasonable probability of success on the merits. In their view, the degree of likelihood of success on the merits is merely one factor which must be considered and balanced with the comparative injuries of the parties in determining whether a preliminary injunction should issue. We disagree. In view of the extraordinary relief inherent in the issuance of a preliminary injunction, it is simply not unreasonable to require the moving party to demonstrate a reasonable probability of success on the merits as a prerequisite to granting such relief. Moreover, by also requiring a finding by the trial court that the balance of equities favors injunctive relief, the trial judge is able to consider fully whether the threatened injury to the plaintiff outweighs the threatened harm the preliminary injunction may inflict on the defendant.[6]

In addition, because the trial court determined that Rathke had not shown a reasonable probability that section 18–16–101 *et seq.* was unconstitutional beyond a reasonable doubt, it denied the motion for a preliminary injunction.[7] The appellants contend that the trial court adopted an incorrect and inappropriate standard "not in harmony with the purposes of the preliminary injunction procedure and the declaratory judgment law to relieve their needs for judicial protection" pending a trial on the merits. In their view, the trial court erroneously substituted the requirement that

---

**6.** Indeed, the trial court did so in this case in ruling on Rathke's motion for a new trial, although it did not make a specific finding on that issue following the hearing on the preliminary injunction:

"[The appellants] have failed to demonstrate a probability of success. On balance, taking into account the public interest, the right of the people to be secure in their homes, to expect reasonable regulations so as to avoid burglary and the trafficking in burglarized and stolen goods; when you balance those considerations together with the legislative policy as expressed in the statute on the one hand as against the interest of the plaintiffs in this case, and realizing that they have not demonstrated a probability of success, I think that under all considerations, the statute is perfectly legitimate and I think that

the Court did adopt the proper criteria in respect thereto."

**7.** Although the trial court also determined that the appellants were faced with a danger of real, immediate, and irreparable injury, and that there was no plain, speedy, and adequate remedy at law, it did not make specific findings relating to the other prerequisites for preliminary injunctive relief. Because we affirm the trial court's denial of the preliminary injunction in this case on the basis of its conclusion that the appellants failed to establish a reasonable probability of success on the merits at trial, however, we need not address whether the appellants have satisfactorily established the remaining prerequisites for preliminary injunctive relief.

the moving party establish a "probability of success on the merits" with a requirement that the moving party establish the probability that the statute was "unconstitutional beyond a reasonable doubt." We are not persuaded by appellants' argument.

■ The long-established rule in Colorado is that every statute is presumed to be constitutional until and unless the contrary is shown beyond a reasonable doubt. *See, e.g., Bollier v. People,* 635 P.2d 543 (Colo. 1981); *People ex rel. C. M.,* 630 P.2d 593 (Colo.1981); *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978); *Clark v. People,* 176 Colo. 48, 488 P.2d 1097 (1971). The weight of the presumption of constitutionality is even greater when, as in this case, the challenged statute was enacted in the valid exercise of the state's police power. *United States Building and Loan Assoc. v. McClelland,* 95 Colo. 292, 36 P.2d 164 (1934), *cert. denied,* 294 U.S. 706, 55 S.Ct. 351, 79 L.Ed.2d 1241 (1935); *Cavanaugh v. People,* 61 Colo. 292, 157 P. 200 (1916). We do not believe, as the appellants suggest, that the trial court's formulation of the "reasonable probability of success" requirement was an unworkable and illogical combination of language of probability and language of certainty. In making a determination whether Rathke demonstrated a reasonable probability that section 18–16–101 *et seq.* was unconstitutional, the trial court was obliged to assess the proper legal standard and applicable burden of proof which would be required at a subsequent trial on the merits. Therefore, the requirement of showing a reasonable probability of success necessarily compelled the trial court in this case to determine whether Rathke established a reasonable probability that the contested statute was unconstitutional beyond a reasonable doubt. Under the circumstances, the trial court did not abuse its discretion in denying the motion for a preliminary injunction.

Accordingly, we affirm the judgment of the district court.

HODGES, C. J., does not participate.