## IN RE the PATERNITY OF S.M.S., J.S., Appellant,

v.

## S.A.D., Respondent.

Court of Appeals

*No. 85–0707. Oral argument December 12, 1985.—Decided February 5, 1986.*
(Also reported in 384 N.W.2d 709.)

For the appellant, the cause was submitted on the briefs of *Chronus and Kotsonis* of Milwaukee and oral argument by *George N. Kotsonis.*

For the respondent, the cause was submitted on the brief and oral argument of *Linda McKenzie Georgeson,* assistant corporation counsel.

For the Department of Justice, an amicus curiae brief was submitted by *Bronson C. La Follette,* attorney general, and *James H. McDermott,* assistant attorney general. Oral argument by *James H. McDermott.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.    This case challenges the jury selection method used in the Waukesha county circuit courts. Two issues are raised: First, that the method used fails to comply with sec. 756.04(3), Stats. Second, even if there is no statutory violation, the method is unconstitutional because it compartmentalizes prospective jurors into "specialized panels" by placing them in civil court, juvenile court, criminal court and the like for the duration of their tour of duty. We reject both grounds and affirm.

Following is a brief description of how jury panels are selected in Wisconsin. Before the first Monday in April of every year, jury commissioners draw a list of two hundred names countywide. Section 756.04(2)(a), Stats. These names are placed into a master tumbler. Section 756.04(2)(c). The names in the master tumbler are usable for one year. Section 756.04(5). This procedure is not disputed. At dispute is what happens once the names are in the master tumbler. For the answer, we turn to sec. 756.04(3), which in pertinent part reads as follows:

> At least 15 and not more than 30 days before *the sitting of any court* at which a jury is required to attend, the clerk of circuit court shall in the presence of at least 2 of the commissioners draw a suffi-

cient number of names from the tumbler [*i.e.,* the "master tumbler" referred to in sec. 756.04(2)(c)] (bracketed material and emphasis supplied).

Waukesha County's Clerk of Courts applies the above statute by first surveying the need for juries among the various branches of the Waukesha circuit court. Then, four or five times a year, she draws a sufficient number to satisfy the needs of the various courts. Thus, a regular and reserve panel is created for each branch in need of a panel. In Waukesha county, each branch has specialized areas of law. Thus, for example, a panel assigned to the criminal branch will hear only criminal cases. A panel assigned to the branch that hears paternity cases will hear cases of that nature and so forth.

The appellant claims that this procedure for selecting panels is contrary to the plain meaning of the statute. In the appellant's view, before *each* jury trial, a panel must be chosen from the *master* tumbler at least fifteen days and not more than thirty days beforehand. The appellant seizes upon the clause, "at least 15 and not more than 30 days *before the sitting of any court at which a jury is required to attend,"* as demonstrative of his argument. The appellant concludes that it is error to select a panel for each specialized branch of the court from the master tumbler and then pick a jury from that panel, rather than pick each jury directly from the master tumbler on a case-by-case basis.

We recognize the rule of statutory construction that clear and unambiguous language should be given its ordinary and accepted meaning. *Stoll v. Adriansen,* 122 Wis.2d 503, 510, 362 N.W.2d 182, 186 (Ct. App. 1984). We observe, however, that courts may construe a statute whose meaning is clear if literal application

313

would lead to an absurd or unreasonable result. *Coca-Cola Bottling Co. v. La Follette,* 106 Wis.2d 162, 170, 316 N.W.2d 129, 133 (Ct. App. 1982). The spirit and intention of the statute should govern over the literal meaning. *Town of Menominee v. Skubitz,* 53 Wis.2d 430, 437, 192 N.W.2d 887, 890 (1972). We hold that the appellant's construction violates the spirit and intent of the jury selection law.

We reach this conclusion after considering the constitutional and statutory history provided by the Director of State Courts as *amicus curiae.*

Prior to April 1977, Wis. Const. art. VII, § 11, commanded that circuit court be held at least twice a year in each county. Thus, from 1849 until 1977, Wisconsin's courts sat in two terms.

Two statutes implementing this constitutional provision were promulgated. One statute, Wis. Rev. Stat. ch. 97, § 8 (1849), was the forerunner of the statute disputed in the instant case—sec. 756.04(3), Stats. This statute referred to drawing of jury panels prior to the "sitting of any court." The other statute, namely Wis. Rev. Stat. ch. 97, § 9 (1849), commanded the sheriff to summon the persons drawn to appear at the start of the "term."

Thus, the words "sitting" and "term" were used interchangeably in the two statutes. One statute reasonably related to the other, since one concerned the drawing of the jury and the other concerned the process for getting the drawn jury to appear at court. We conclude that the term "sitting of any court" meant the same as the *"term* of any court." For further support, we cite Black's Law Dictionary (5th ed. 1979), defining "sitting" as "[t]he part of the year in which judicial business is transacted."

314

In 1977, the constitutional requirement that the circuit court sit at least twice per year was repealed. *See* 1975 J.R. 13, 1977 J.R. 7. The statutes were changed deleting reference to "terms" of the circuit court.[1]

Unfortunately, through legislative oversight, the language in sec. 756.04(3), Stats., was not changed. Thus, although abolition of terms of court for circuit courts has taken place, the statute still calls for the selection of panels before every "sitting" which means the same as "term." Since there is no longer any such thing as a term, the statute asks the impossible.

Such being the case, we accept the solution proffered by *amicus*. This proposition is referred to in the Latin, *lex non cogit ad impossibilia* (the law does not compel the doing of impossibilities). When strict compliance with the terms of the written law is impossible, compliance as near as can be, under judicial sanction, is allowed. *Dalzell v. Kane,* 183 A. 782, 784 (Pa. 1936). This solution is well-harmonized with our supreme

---

[1] Apparently reacting to the repeal of Wis. Const. art. VII, § 11, effecting the abolition of constitutionally required terms for circuit courts, the legislature did nothing to reestablish the terms of court which had been specified in sec. 252.06, Stats. (1975). Section 252.06 became sec. 753.06, Stats., when ch. 252 was renumbered ch. 753 by sec. 92, ch. 187, Laws of 1977, which went into effect August 1, 1978. *See* sec. 138, ch. 187, Laws of 1977. The legislature then proceeded, however, to repeal and recreate sec. 753.06 by sec. 307, ch. 449, Laws of 1977, with such repeal and recreating also effective on August 1, 1978 (*see* sec. 499, ch. 449, Laws of 1977 ). As so repealed and recreated, sec. 753.06 set forth the judicial districts into which this state is divided, as had its immediate predecessor; but unlike such predecessor, *it sets forth no terms of court for the circuit courts,* nor are such terms set forth elsewhere in ch. 753, or in any other part of the Wisconsin Statutes.

court's holding that substantial compliance with our jury selection law is all that is required. *State v. Bond,* 41 Wis.2d 219, 227, 163 N.W.2d 601, 604 (1969).

We hold that Waukesha county's present practice of drawing panels four or five times per year conforms, as nearly as possible, with the law. Because the old law required only a minimum of two drawings per year, the present system surpasses the past system.

We therefore reject the appellant's argument that the legislature meant a new panel must be selected prior to every single jury trial. Legislative history reveals no such intent.

We further reason, as a matter of common sense, that picking a jury panel from a master tumbler before every case would be impossibly time consuming, expensive and a wasteful exercise of judicial administration. To read the statute in that manner would be unreasonable and absurd.

The appellant claims, however, that even if his statutory interpretation argument fails, selecting panels for various branches of the circuit court is unconstitutional if those branches are confined to specialized areas of the law. The appellant objects to panels that will only hear paternity cases or only criminal felony cases or only juvenile cases. The appellant reasons that it would be the better practice to put the names back into the master tumbler after each trial and select anew. That way, there would be a greater chance that panel members would approach the case absent familiarity with the particular subject matter. Too, there would be a better chance that the jurors would not have served together on prior panels.

The appellant insists that familiarity with a subject of the law and with other members creates bias among the panel and violates the constitutional requirement of an impartial panel.

The appellant conceded at oral argument that he is unable to cite any statute or case law outlawing the "specialization" of which he complains. We are not surprised and cannot agree that prior jury service on a case in a similar area of the law or "familiarity" with fellow jurors from prior cases constitutes a *per se* deprivation of the right to a fair trial or an impartial jury.

In fact, our supreme court has ruled similarly. In *McKissick v. State,* 49 Wis.2d 537, 543, 182 N.W.2d 282, 285 (1971), the defendant contended that the Milwaukee county system of two panels, one for criminal actions and one for civil, created a biased jury. Since the criminal panel sat for a longer term, McKissick argued that criminal jury panels gained more experience in hearing criminal matters, resulting in bias in the state's favor. The supreme court held that added experience works in the accused's favor as well; it implicitly rejected *per se* treatment and concluded that the defendant must present a *prima facie* case of prejudice in order to have a viable claim.

Since no showing of prejudice has been made in this case, the appellant's argument fails.[2]

---

[2] The county suggested that we need not reach any of the statutory or constitutional issues in this case because the appellant failed to demonstrate any harm, prejudice or violation of a fundamental right. Such a showing is necessary before any case can be reversed. We agree, but, in our discretion, we nonetheless address the statutory and constitutional issues because the claims are being

*By the Court.*—Judgment and order affirmed.

raised with regularity in the circuit courts of Waukesha county and an appellate decision will be dispositive of these claims.