OPINION OF THE COURT
Charles J. Tejada, J.
Introduction
This proceeding is initiated by petitioner, 475 Ninth Avenue *599 Associates, pursuant to article 78 of the Civil Practice Law and Rules, by way of order to show cause, to enjoin respondents, Michael Bloomberg, Mayor of the City of New York, the New York City Department of Transportation and the Department of Transportation’s Commissioner Iris Weinshall, from constructing a permanent pedestrian barricade on the sidewalk on Ninth Avenue between 36th Street and 37th Street, to prevent pedestrians from crossing the Lincoln Tunnel’s Ramp C.
Specifically, petitioner alleges a violation of lawful procedures in that respondents have failed to undertake an environmental analysis for an “unlisted action,” pursuant to New York’s State Environmental Quality Review Act (SEQRA), Environmental Conservation Law § 8-0109 and 6 NYCRR 617.7, and the City Environmental Quality Review rules, 62 RCNY chapters 5-6, that respondents have acted in excess of their jurisdiction, that respondents have violated the petitioner’s due process rights, and that respondents have trespassed on petitioner’s property. Further, petitioner alleges that respondents’ action constitutes an unconstitutional taking without just compensation, that respondents’ action is arbitrary and capricious, and that it would have an adverse impact on local development plans.
Respondents oppose the relief sought contending that the permanent pedestrian barricade is a traffic control device “type II” action, exempt from SEQRA environmental review procedures, that they are statutorily authorized to regulate pedestrian and vehicular traffic on New York City streets, that the pedestrian barricade will be installed on city owned property, that there is no constitutional or statutory requirement of notice or a public hearing for the installation of a traffic control device, and that a pedestrian barricade on one street will not significantly impact local development plans.
Background
Petitioner is a real estate investment and management company which owns a recently completed 12-story, mixed use building, with ground floor retail space at 475 Ninth Avenue, between West 36th Street and West 37th Street. According to petitioner, such approved retail uses were part of the goals and plans for the community and were intended to increase pedestrian activity and enhance the pedestrian environment along Ninth Avenue.
On September 22, 2003, respondents began the construction of a permanent pedestrian barricade along the west side of *600 Ninth Avenue between 36th and 37th Streets to prevent pedestrians from crossing the Lincoln Tunnel’s Ramp C.
On September 24, 2003, petitioner filed an order to show cause and an ex parte application for a temporary restraining order (TRO) was granted.
On or about October 3, 2003, petitioner filed a notice of revised verified petition demanding a trial by jury.
On October 6, 2003, oral argument was heard on petitioner’s application for injunctive relief. At the conclusion of the hearing, this court reserved decision on the underlying matter, but continued the TRO.
On October 9, 2003, the TRO was vacated.
On October 21, 2003, petitioner filed a verified reply to respondents’ answer.
Upon consideration of the order to show cause, answer, reply, affidavits, exhibits and the oral arguments, petitioner’s request for a permanent injunction is denied based on the following.
Discussion
CPLR 7803 (3) provides for limited judicial review of administrative actions, stating, in part, that the only questions to be considered in a proceeding under this article are: whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. (CPLR 7803 [3].)
Petitioner’s first argument for injunctive relief centers on its contention that respondents’ construction and installation of a permanent pedestrian barricade will have a significant adverse impact on the environment, in that it “will cause a diminution in value of petitioner’s property.” Therefore, petitioner argues that respondents should be required to undertake an environmental analysis as required for an unlisted action by SEQRA.
Indeed, section 8-0109 (2) of SEQRA provides that “[a]ll agencies . . . shall prepare, or cause to be prepared by contract or otherwise an environmental impact statement on any action they propose or approve which may have a significant effect on the environment.” (ECL 8-0109 [2]; Chatham Green v Bloomberg, 1 Misc 3d 434 [2003].)
However, respondents assert that the pedestrian barricade is a traffic control device that is an exempt “type II” action under SEQRA. Specifically, SEQRA divides actions into type I, type II and unlisted actions. A type I action carries the presumption *601 that it is likely to have a significant adverse impact on the environment and may require an environmental impact study. Type II actions are not subject to environmental impact review because these actions have been determined not to have a significant adverse impact on the environment. Unlisted actions must undergo an environmental impact study to determine if the action may have a significant adverse impact on the environment (Chatham Green v Bloomberg, 1 Misc 3d 434 [2003]).
Consequently, the threshold question presented to this court is whether a permanent pedestrian barricade, designed as a traffic control device to block pedestrian traffic across a city street, is per se an exempt type II action not subject to SEQRA review. Indeed, this issue appears to be a question of first impression. (Cf. Chatham Green v Bloomberg, 1 Misc 3d 434 [2003] [where the court held that because the barricades installed by the New York City Police Department (NYPD) restricted road access to vehicular traffic in the downtown Manhattan area, the NYPD was mandated under SEQRA to conduct an environmental analysis to determine if an environmental impact statement was required].)
Whether the permanent pedestrian barricade in question is a type II or an unlisted action is not simply a matter of labeling by petitioner or respondents. Although “a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion” (Matter of Pell v Board of Educ. of Union Free School Dish No. 1, 34 NY2d 222, 232 [1974] [citations omitted]), a mere assertion by respondents that the permanent pedestrian barricade, at issue, is a type II action does not foreclose review of respondents’ determination. Instead, the court’s review of respondents’ determination is limited to the facts and record adduced before the agency when the administrative determination was rendered (Matter of Levine v New York State Liq. Auth., 23 NY2d 863 [1969]).
A review of the record before this court leads to the conclusion that respondents’ determination that the permanent pedestrian barricade at issue is a type II traffic control device not subject to SEQRA review is a reasonable interpretation of applicable statutes. The respondents reached this conclusion by looking to Vehicle and Traffic Law § 153, which defines traffic control devices as “[a] 11 signs, signals, markings, and devices . . . erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traf *602 fic.” (See Vehicle and Traffic Law § 153.) SEQRA does not define what constitutes a “traffic control device.” However, 6 NYCRR 617.2 provides that a type II action means an action or class of actions identified in SEQRA regulations, 6 NYCRR 617.5 (c) (16), which provides that the “installation of traffic control devices on existing streets, roads and highways” are not subject to review.
Consequently, the pedestrian barricade at issue here falls within Vehicle and Traffic Law § 153 as well as SEQRA regulations, 6 NYCRR 617.5 (c) (16).
The record before this court also supports the conclusion that the permanent pedestrian barricade effects only pedestrian traffic and therefore is dissimilar to restrictions placed on vehicular traffic. In other words, the sole effect of the permanent pedestrian barricade will be to regulate, warn or guide pedestrian traffic around a dangerous vehicular traffic entrance to the Lincoln Tunnel. Thus, this distinction makes petitioner’s reliance on the holding of Chatham Green v Bloomberg (1 Misc 3d 434 [2003]) misplaced.
Consequently, this court finds that the record before it supports respondents’ determination that the permanent pedestrian barricade, at issue, is a type II traffic control device not subject to SEQRA review and that this determination is a reasonable interpretation of the statutes and regulations respondents are charged with administering (see generally Matter of Salvati v Eimicke, 72 NY2d 784 [1988]).
Petitioner next asserts that respondents exceeded their jurisdiction under Administrative Code of the City of New York §§ 19-101.1, 19-107, 19-113 and/or 19-179 and under New York City Charter § 2901 et seq. Administrative Code § 19-107 applies to persons other than the Commissioner of the Department of Transportation and concerns temporary street closings; § 19-113 requires that “[s]treets of twenty-two feet in width and upward shall have sidewalks on each side”; and § 19-113 requires the Department of Transportation to retain specifications for the construction of sidewalks.
Here, there is no dispute about persons other than the Commissioner, or about the width of a sidewalk or failure to keep any sidewalk specifications. Thus, there is no basis for this court to conclude that respondents violated these provisions of the Administrative Code.
Lastly, Administrative Code § 19-179 requires the Department of Transportation to conduct a study on the feasibility of
*603 installing traffic calming measures, which include “protected pedestrian phases.” This same section defines “protected pedestrian phases” as “traffic control indications that are adjusted to provide that all conflicting vehicular movements are stopped in order to accommodate pedestrian movement.” (Administrative Code § 19-179 [a] [4].) Also, “traffic calming” is defined as “any engineering measure which slows vehicular traffic and accommodates other street users such as pedestrians, bicyclists or children at play.” (Administrative Code § 19-179 [a] [1].)
In this case, the effect of the pedestrian barricade is to regulate, warn or guide pedestrian traffic and not to slow or otherwise regulate any and all conflicting vehicular movements in the area. Consequently, petitioner has failed to establish that section 19-179 of the Administrative Code is applicable under the circumstances presented here.
Additionally, based on NY City Charter § 2903 (a) (1), which permits the Commissioner to “make such rules and regulations for the conduct of . . . pedestrian traffic in the streets, squares, avenues, highways and parkways of the city as may be necessary,” petitioner asserts that respondent’s action is only authorized pursuant to respondent’s rule-making power.
Although the plain language of this provision of the NY City Charter makes it clear that the Commissioner is permitted to make regulations as well as rules for the control of pedestrian traffic, respondents’ action is not pursuant to any rule-making authority under the NY City Charter. Instead, respondents’ action is an exercise of authority granted to it by Vehicle and Traffic Law § 1642 (a), which provides respondents with the authority to “prohibit, restrict or regulate traffic on or pedestrian use of any highway” in New York City; § 1640 (a) (3) authorizes respondents to “[r]egulate the crossing of any roadway by pedestrians”; and § 153 defines traffic control devices.
Consequently, this court finds that respondents’ determination to install a permanent pedestrian barricade was not made in excess of its authorized powers or jurisdiction since respondents have been delegated the responsibility of regulating pedestrian traffic pursuant to the NY City Charter, the Vehicle and Traffic Law and the Administrative Code.
We turn now to petitioner’s request for a trial by jury. CPLR 7804 (h) requires that where a triable issue of fact is raised “it shall be tried forthwith.” (CPLR 7804 [h]; see also 6A NY Jur 2d, Article 78 and Related Proceedings § 330.)
*604 In this case, petitioner merely questions the sufficiency of evidence to warrant respondents’ determination to close a portion of the west side of Ninth Avenue between West 36th Street and West 37th Street to pedestrian traffic. Such questions as to whether respondents were required to act pursuant to SEQRA and whether they acted in excess of their jurisdiction in violation of numerous laws cited by petitioner are indeed questions of law and not fact, and therefore will be determined by the court on the record here (Bogan v Municipal Civ. Serv. Commn., 29 Misc 2d 750 [I960]; also see generally Green v Commissioner of Envtl. Conservation, 94 AD2d 872 [1983]).
Thus, petitioner’s demand for a trial by jury is denied.
Petitioner also contends that respondents violated their due process rights under the New York and/or Federal Constitutions by failing to provide notice, public hearings or publications of any relevant determination or fact-findings prior to construction of the pedestrian barricade.
There is no distinct due process right under the State Constitution (Matter of Abrams v Public Serv. Commn. of State of NY., 95 AD2d 906 [1983]). “In order to sustain an action for deprivation of property without due process of law, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.” (Local 342, Long Is. Pub. Serv. Empl., UMD, ILA, AFL-CIO v Town Bd. of Town of Huntington, 31 F3d 1191, 1194 [2d Cir 1994] [internal quotation marks omitted].)
The issue here is whether petitioner was deprived of a property interest which warrants due process protection.
This court finds that petitioner has failed to establish any property interest in the sidewalk of Ninth Avenue between 36th and 37th Streets, a public sidewalk owned by the City of New York. Nor has petitioner established that respondents’ barricading of pedestrian access across Ramp C, adjacent to its property, is a trespass since the pedestrian barricade at issue is being installed on a public street owned by the City of New York.
Similarly, petitioner has failed to present any evidence to support its contention of a “de facto” taking without just compensation, which deprives petitioner of all economically viable use of its property in violation of Eminent Domain Procedure Law §104.
Indeed, petitioner has failed to present any evidence that the respondents have acquired any property interest in petitioner’s *605 real property. Instead, petitioner claims that the permanent pedestrian barricade “would dramatically diminish the value of the property for retail purposes and/or render the property essentially unusable for retail operations,” that it “would arbitrarily block or render nearly useless a fire exit from the property, thereby significantly reducing the value of the property,” and that it “would impose on 475 Ninth Avenue Associates the cost of reconfiguring one or more fire exits on the property without just compensation.”
Based on the above, this court finds that there is no basis to conclude that the pedestrian barricade will deprive petitioner of all economically viable use of its property (Keystone Bituminous Coal Assn, v DeBenedictis, 480 US 470 [1987], citing Pennsylvania Coal Co. v Mahon, 260 US 393 [1922]), or that the barricading of pedestrian access across Ramp C is compensable.
Similarly, there is no basis to conclude that respondents’ action will have any significant effect on the Hudson Yards Plan or any of the communities’ development goals.
Additionally, petitioner asserts that respondents’ action was arbitrary and capricious because it did not study the impact on pedestrian and vehicular traffic flow nor consider the stress on neighborhood facilities created by the pedestrian barricade.
In a CPLR article 78 proceeding to review whether an agency’s determination is arbitrary and capricious, the proper function of the court is limited to scrutinizing the record to confirm that the agency’s decision has a rational basis and is not arbitrary and capricious (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1, 34 NY2d 222 [1974]).
A review of the record before this court reveals that respondents weighed alternatives such as the placement and use of signs or a traffic light and applied the criteria in its Traffic Operation Manual before determining that the pedestrian barricade was the most effective solution to the problem at the location.
A representative sample of the number of cars turning right onto and the number of pedestrians walking across Ramp C was also considered by respondents, as was a representative sample of the number of accidents involving both vehicles and pedestrians at Ramp C. Further, respondents considered the Port Authority’s plans that might increase vehicular traffic on Ramp C and the dangers that the increased vehicular traffic could cause at the location and a meeting was held with members of *606 Community Board No. 4 on August 20, 2003 to present the pedestrian barricade plan.
Lastly, the public interest in insuring that pedestrians do not continue to be exposed to the dangers involved in crossing Ramp C provided a primary motivation for respondents’ action.
“The City has the power to regulate the streets even though an abutting owner may be inconvenienced.” (Sage Realty Corp. v Ciiy of New York, Sup Ct, NY County, Index No. 100446/98.) Additionally, administrative agencies enjoy broad discretionary power when making determinations on matters that they are empowered to decide (see generally, Matter of Ifrah v Utschig, 98 NY2d 304 [2002]; also see generally, Matter of Ortiz-Arroyo, NYLJ, Sept. 5, 2003, at 18, col 3). Moreover, where the court finds a reasonable basis in fact for the administrative determination, its function is exhausted (300 Gramatan Ave. Assoc, v State Div. of Human Rights, 45 NY2d 176 [1978]).
This court, after having carefully considered the arguments advanced by respective counsel at the hearing, and having reviewed the order to show cause, the petition, memoranda, exhibits and various supporting documentation, finds that respondents acted properly and within their discretion concerning the construction and placement of a permanent pedestrian barricade and that respondents’ action was neither arbitrary and/or capricious.
The respondents’ determination to construct a permanent pedestrian barricade on the sidewalk to prevent pedestrians from crossing the Lincoln Tunnel’s Ramp C has a rational basis given the dangers posed to pedestrians from vehicles turning onto Ramp C.
Finally, CPLR 6301 authorizes a preliminary injunction in either of two situations, “where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.” (CPLR 6301.)
Thus, on a motion pursuant to CPLR 6301, a plaintiff must demonstrate a likelihood of success on the merits, irreparable injury absent the granting of the preliminary injunction, and a *607 balancing of the equities which favors the issuance of injunctive relief (Morris v Port Auth. of N.Y. & N.J., 290 AD2d 22, 26 [2002]). Irreparable injury is injury that cannot be “adequately compensated in damages or there is no set pecuniary standard for the measurement of damages.” (Board of Higher Educ. of City of N.Y. v Marcus, 63 Misc 2d 268, 273 [1970].) Simply stated, a preliminary injunction is not available in an action for money only (Credit Agricole lndosuez v Rossiyskiy Kredit Bank, 94 NY2d 541 [2000]).
Pared down to the gravamen of petitioner’s complaint, this court concludes that petitioner’s dispute with respondents essentially concerns perceived missed or lost investment opportunities. Petitioner acknowledges that its dispute with respondents concern possible loss of rental income from commercial ground floor retail tenants. Petitioner states that “the pedestrian barricade will prevent pedestrians from traveling along the west side of Ninth Avenue between 36th and 37th Streets, thereby dramatically reducing the viability of the building for retail use, causing significant economic harm to the petitioner.” Petitioner adds that “two of its prospective retail tenants have backed out of contracts for space at 475 Ninth Avenue because of respondent’s proposed action.”
Preliminary injunctive relief is a drastic remedy, which will only be granted if it is established that there is a clear right to the relief under the law and the facts (Anastasi v Majopon Realty Corp., 181 AD2d 706, 707 [1992], citing County of Orange v Lockey, 111 AD2d 896 [1985]). Consequently, petitioner has failed to establish a clear right to the relief requested and that the harm, if any, it may be exposed to cannot be easily compensable by money damages.
For the reasons stated, it is ordered that petitioner’s motion to enjoin respondents from constructing a permanent pedestrian barricade on the sidewalk to prevent pedestrians from crossing the Lincoln Tunnel’s Ramp C, on Ninth Avenue between 36th Street and 37th Street, is denied and the motion is dismissed.