PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

JESSE B. POLLARD,
　　　　　*Defendant-Appellant.*

No. 03-4761

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-03-122)

Argued: October 1, 2004

Decided: November 9, 2004

Before WILKINS, Chief Judge, TRAXLER, Circuit Judge,
and Roger W. TITUS, United States District Judge
for the District of Maryland, sitting by designation.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Traxler joined. Judge Titus wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Michael William Lieberman, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Jennifer Ann Dominguez, Special Assistant United States Attorney, OFFICE OF THE UNITED

STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Nia Ayanna Vidal, Assistant Federal Public Defender, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

## OPINION

WILKINS, Chief Judge:

Jesse B. Pollard appeals a decision of the district court affirming a magistrate judge's denial of his motion to dismiss a petition on probation filed against him and to vacate the underlying sentence of probation. Pollard argues that his sentence of probation is invalid under *Alabama v. Shelton*, 535 U.S. 654 (2002), because he was not appointed counsel before he pleaded guilty. Finding that Pollard's right to counsel has not been violated, we affirm.

I.

A thorough recitation of the facts appears in the opinion of the district court. *See United States v. Wilson*, 281 F. Supp. 2d 827, 829-30 (E.D. Va. 2003). We recount them briefly here.

Pollard was arrested on May 5, 2002, at the Marine Corps Base in Quantico, Virginia. He was charged with driving while intoxicated, driving under the influence, and reckless driving, in violation of 18 U.S.C.A. § 13 (West 2000) (assimilating state-law crimes committed on federal property). He appeared without counsel before a United States Magistrate Judge and pleaded guilty to one count of driving under the influence. He was sentenced to one year of supervised probation with conditions and ordered to pay a $250 fine and a $25 special assessment. At no point in the proceedings did Pollard waive his right to appointed counsel.

Eleven days later, on September 20, 2002, Pollard was again arrested for driving under the influence, an event that violated the

conditions of his probation. His probation officer filed a petition on probation with the magistrate judge, who issued a warrant for Pollard's arrest. Counsel was appointed to represent Pollard in his revocation hearing. Pollard moved to dismiss the petition and to vacate the underlying sentence of probation on the ground that he had not been appointed counsel before he pleaded guilty to the first driving under the influence charge. The magistrate judge denied the motion. Instead of revoking Pollard's probation and sentencing him to prison for the violation, the magistrate judge ordered that Pollard's probation be continued.

On appeal to the district court, Pollard argued that his uncounseled guilty plea and subsequent sentence of probation violated his Sixth Amendment right to counsel. In support of his argument, Pollard relied upon *Shelton*, 535 U.S. at 658, which held that a suspended sentence of imprisonment may not be imposed unless the defendant has been appointed counsel or has waived his right to have counsel appointed. The district court, refusing to equate suspended sentences of imprisonment with stand-alone sentences of probation, rejected Pollard's argument. Noting that "[t]he Sentencing Reform Act of 1984 abolished suspended sentences within the federal court system and established probation as an independent sentence," the court held that "the imposition of probation under the federal system does not equate to the imposition of a sentence of imprisonment and suspension of that sentence: probation does not involve the imposition of any term of incarceration." *Wilson*, 281 F. Supp. 2d at 831. The district court therefore concluded that Pollard's Sixth Amendment right to counsel was not implicated by his stand-alone sentence of probation.

## II.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has made clear that the contours of the right to counsel depend upon the nature of the charged offense and, in some cases, the actual sentence imposed. In felony prosecutions, a defendant has a right to counsel regardless of the sentence imposed. *See Gideon v. Wainwright*, 372 U.S. 335, 339-45 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 463

(1938). By contrast, in misdemeanor and petty offense prosecutions, the right to counsel is triggered only if the defendant is actually sentenced to a term of imprisonment. *See Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."); *see also Scott v. Illinois*, 440 U.S. 367, 373-74 (1979) (holding that "actual imprisonment," not "the mere threat of imprisonment," triggers the right to counsel).

In *Shelton*, the Court applied the "actual imprisonment" standard of *Argersinger* and *Scott*, holding that a defendant sentenced to a term of imprisonment has a right to counsel even if the sentence is immediately suspended and coupled with probation. *See Shelton*, 535 U.S. at 658 (noting that the Court was interpreting "the Sixth Amendment right to appointed counsel, as delineated in *Argersinger* and *Scott*"). The Court refused to distinguish between a prison sentence that the defendant begins to serve immediately and one that is suspended, coupled with probation, and triggered only upon a probation violation. "A suspended sentence is a prison term imposed for the offense of conviction," the Court explained. *Id.* at 662. "Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense." *Id.*

Pollard argues that *Shelton* should control here because suspended sentences of imprisonment coupled with probation are, according to Pollard, "functionally equivalent" to stand-alone sentences of probation. Consol. Br. of Appellants at 6. "[I]n both cases," Pollard asserts, "a defendant is released into the community under conditions and subject to imprisonment if found in violation of these conditions." *Id.* Pollard would have us distill a very broad rule from *Shelton*: that the right to counsel attaches whenever a defendant would be vulnerable to imprisonment as a result of a sentence.[1]

In support of his argument, Pollard notes a number of similarities between the Alabama sentencing regime at issue in *Shelton* and the

---

[1]More precisely, Pollard's counsel submitted at oral argument that the only sentence that may be imposed upon an uncounseled defendant under *Shelton* is a fine.

federal sentencing regime at issue here. For example, if a defendant receives a suspended prison sentence coupled with probation under the Alabama regime, the defendant is subject to conditions which, if violated, could lead to imprisonment. The same is true for defendants sentenced to stand-alone probation under the federal regime. Additionally, under the Alabama regime, the court is not *required* to activate a suspended prison sentence if the defendant violates the conditions of his probation; the relevant statute provides the court with a number of options upon receiving notice of a violation, including continuing the suspension, issuing warnings, conferencing with the probationer, modifying the conditions of probation, or activating the prison sentence. *See* Ala. Code § 15-22-54(d)(1) (2003) (listing options); *accord Shelton*, 535 U.S. at 675-76 (Scalia, J., dissenting) (noting that imprisonment under the Alabama regime is contingent on the court selection among the various available options). Similarly, under the federal regime, "if the court finds that a defendant violated a condition of probation, the court may continue probation, with or without extending the term or modifying the conditions, or revoke probation and impose any other sentence that initially could have been imposed." *United States Sentencing Guidelines Manual* ch. 7, pt. A, § 2(a) (2003).

Notwithstanding these general similarities, we do not believe that the constitutionality of Pollard's sentence is controlled by *Shelton*. First, *Shelton* expressly reserved the question of whether uncounseled defendants may receive stand-alone sentences of probation. *See Shelton*, 535 U.S. at 672-73 (declining to consider whether "probation uncoupled from a prison sentence should trigger no immediate right to appointed counsel" because there was "not so much as a hint . . . in the decision of the Supreme Court of Alabama, that Shelton's probation term is separable from the prison term to which it was tethered"). Second, *Shelton* made very clear that it was applying—not abandoning—the bright-line, "actual imprisonment" rule of *Argersinger* and *Scott*. The *Shelton* Court characterized "the *Argersinger-Scott* 'actual imprisonment' standard" as "the controlling rule" and stated that it was "[a]pplying the 'actual imprisonment' rule to the case before [it]." *Id.* at 662. We believe that in order to adopt the broad interpretation of *Shelton* that Pollard presses upon us, we would have to conclude that the Supreme Court, when it decided *Shelton*, implicitly abandoned the principles that animated its decision in *Scott*.

In *Scott*, the defendant was charged with shoplifting merchandise valued at less than $150. Under applicable Illinois law, the maximum penalty for that offense was "a $500 fine or one year in jail, or both." *Scott*, 440 U.S. at 368. Scott, who had not been appointed counsel and therefore represented himself at trial, was convicted and sentenced to pay a $50 fine. He appealed, arguing that his right to counsel had been violated because the statute under which he was charged authorized imprisonment. The Supreme Court rejected his argument, drawing a bright line between "fines or the mere threat of imprisonment" and "actual imprisonment." *Id.* at 373.

Although not expressly raised in *Scott*, we note that the defendant there would have been "vulnerable to imprisonment" as a result of the fine imposed upon him. When *Scott* was decided, Illinois judges were authorized by statute to imprison defendants who willfully failed to pay fines imposed by the court. *See* Ill. Rev. Stat. ch. 38, ¶ 1005-9-3(a) (1977) ("An offender who defaults in the payment of a fine or in any installment may be held in contempt and imprisoned for non-payment."); *see also People v. Harris*, 354 N.E.2d 648, 649-50 (Ill. App. Ct. 1976) (discussing the power of courts to imprison defendants for failure to pay fines). Should Scott have refused to obey the conditions imposed upon him by the court—*i.e.*, refused to pay the fine—he would have been vulnerable to imprisonment under Illinois law.[2]

Indeed, whenever a court orders a defendant to take or refrain from action, the defendant becomes subject to conditions that render him vulnerable to imprisonment should he disobey those conditions. To adopt a broad rule that the right to counsel is triggered whenever such conditions are imposed would require us to ignore the limiting principles of *Scott*. *See Scott*, 440 U.S. at 373 (dismissing "the mere threat of imprisonment" as insufficient to trigger the right to counsel). As *Shelton* intended to apply *Argersinger* and *Scott*, not to overrule them, we decline to adopt the broad rule advocated by Pollard.[3]

---

[2]The dissent overlooks this possibility. *See post*, at 12 ("The 'threat of imprisonment' in *Scott* evaporated once the judge sentenced the defendant to a mere $50 fine.").

[3]The dissent would also have us adopt this broad rule, but as the dissent acknowledges, to adopt such a rule would require us to conclude

For his original conviction, Pollard was sentenced to probation with certain conditions and ordered to pay monetary penalties. Unlike the defendant in *Shelton*, Pollard was not sentenced to a suspended term of imprisonment coupled with probation. Pollard's stand-alone sentence of probation highlights an essential difference between the federal sentencing regime at issue here and the Alabama regime at issue in *Shelton*. "Prior to the implementation of the federal sentencing guidelines, a court could stay the imposition or execution of [a] sentence and place a defendant on probation." U.S.S.G. ch. 7, pt. A, § 2(a). However, "[t]he statutory authority to 'suspend' the imposition or execution of [a] sentence in order to impose a term of probation was abolished upon implementation of the sentencing guidelines. Instead, the Sentencing Reform Act recognized probation as a sentence in itself." *Id.* (citing 18 U.S.C.A. § 3561 (West 2000)); *accord United States v. Granderson*, 511 U.S. 39, 43 n.3 (1994) ("The Sentencing Reform Act of 1984, for the first time, classified probation as a sentence; before 1984, probation had been considered an alternative to a sentence.").

According to the bright-line, "actual imprisonment" rule of *Argersinger* and *Scott*, Pollard's right to counsel was not violated here because he received a stand-alone sentence of probation, rather than a suspended prison term coupled with probation. *See Scott*, 440 U.S. at 373-74 (holding that the Sixth Amendment "require[s] only that no [uncounseled] indigent criminal defendant be sentenced to a term of imprisonment"). *Shelton* does not compel a different result.

We note that the same conclusion has been reached by the Fifth Circuit. *See United States v. Perez-Macias*, 335 F.3d 421, 427 (5th Cir.) ("[W]e do not believe that the logic of *Shelton* compels extension of the right to counsel to cases where the defendant receives a sentence of probation uncoupled with a suspended sentence."), *cert. denied*, 124 S. Ct. 495 (2003). We also acknowledge, as did the Fifth

---

that the Supreme Court "did not remain true to the literal meaning" of *Argersinger* and *Scott* when it decided *Shelton*. *Post*, at 12. We find no indication in *Shelton* that the Court intended its decision to apply to defendants who do not receive sentences of imprisonment, and absent such indication we decline to take that step ourselves.

Circuit, that the actual imposition of a prison term upon revocation of probation may pose Sixth Amendment problems if the defendant was uncounseled for the underlying conviction that led to probation. *See id.* at 428; *cf. Shelton*, 535 U.S. at 667 (indicating that provision of counsel at probation revocation hearing alone does not alleviate the fact that defendant's underlying, uncounseled conviction was not "subjected to the crucible of meaningful adversarial testing" (internal quotation marks omitted)). However, because Pollard was not sentenced to imprisonment after violating probation, we leave resolution of that question for another day.

### III.

For the reasons stated above, we affirm the judgment of the district court.

*AFFIRMED*

TITUS, District Judge, dissenting:

In *Alabama v. Shelton*, 535 U.S. 546, 662 (2002) the Supreme Court, applying the "actual imprisonment" rule of *Scott v. Illinois*, 440 U.S. 367 (1979), found that "a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged." *Shelton*, 535 U.S. at 662 (quoting *Argersinger v. Hamlin*, 407 U.S. 25, 40 (1972)). The Court further concluded that "Shelton is entitled to appointed counsel at the *critical stage when his guilt* or innocence of the charged crime *is decided* and his *vulnerability to imprisonment is determined*[.]" *Id*. at 674 (emphasis added). The Government urges this Court to find a material distinction of constitutional dimension between a suspended jail sentence with probation in a state proceeding of the type in *Shelton* and a federal stand-alone sentence of probation as here. Respectfully, I am unable to agree with my brothers that the differences are sufficiently material to avoid application of *Shelton* to this case. Accordingly, I would reverse.

In both the state and federal systems utilizing, on the one hand suspended sentences with probation and, on the other, stand-alone sen-

tences of probation, the judicial machinery necessary to authorize actual imprisonment (or "vulnerability to imprisonment") and the attendant deprivation of liberty is complete and irrevocable and cannot be revisited in a later proceeding involving an alleged violation of a term of probation. Thus, the distinction between a system that announces a specific sentence that may result if the person does not perform in accordance with probationary terms, as opposed to one that authorizes later imposition of imprisonment upon proof only of violation of probationary terms, is illusory for Sixth Amendment purposes. Indeed, a sentence of stand-alone probation under the federal system may present more, not less, troubling consequences than a suspended jail sentence with probation because of the broader latitude and discretion of a federal jurist to impose a harsher punishment than otherwise might have seemed appropriate at an earlier time when the probationer's good behavior was assumed.

## I.

The Government's contention is that the "actual imprisonment" rule means that the Sixth Amendment right to counsel attaches only if a specific sentence, although suspended, is imposed, regardless of whether the defendant is then or ever physically incarcerated. The argument thus posited is that suspended sentences with probation can be distinguished from stand-alone sentences of probation because, regarding the latter, no specific term of imprisonment is determined at the original hearing. This is certainly a distinction, but considering the reasoning in *Shelton*, it is one without any material difference. As the Court stated in its holding, "a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged." *Shelton*, 535 U.S. at 658 (quoting *Argersinger v. Hamlin*, 407 U.S. at 40).

How, one must ask, does a state court suspended sentence "end up in the actual deprivation of a person's liberty?" Deprivation of liberty occurs, if at all, only if that person later violates a condition of the probation, thus resulting in the lifting of the suspension and incarceration for the original crime. A federal sentence of "stand alone" probation equally may "end up in the actual deprivation of a person's liberty" in identical fashion: a defendant who has been found only to

have violated a term of his probation is at the mercy of the court for imprisonment for conviction of the original crime, which was adjudicated without counsel.[1] In both cases, the "vulnerability" determination is irretrievably made at the time of conviction and original sentencing.

Indeed, the absence of counsel when a federal defendant is sentenced to a stand-alone period of probation is arguably more prejudicial to a defendant than the imposition of a suspended state sentence without the assistance of counsel because in some states the length of the suspended term of imprisonment acts as a ceiling, limiting the judge's discretion to impose later a harsher sentence that may be more compatible with the defendant's recidivism. For example, the court in *Donaldson v. State*, 62 Md. App. 651, 653-54; 490 A.2d 1319, 1320 (Md. Ct. Spec. App. 1985) (quoting *Brown v. State*, 62 Md. App. 74, 77; 488 A.2d 502, 503-04 (1985)), observed that in Maryland "the sentencing court . . . [is in] the same position it occupied at the original sentencing of the defendant with one exception; the court may not impose a sentence greater than that which was originally imposed and suspended."[2]

"Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent probation revocation hearing, a defendant . . . faces incarceration on a convic-

---

[1]Federal Rule of Criminal Procedure 32.1(a)(6) authorizes a Magistrate Judge to "release or detain the [defendant alleged to have violated a condition of probation] under 18 U.S.C. § 3143(a) pending further proceedings [and] [t]he burden of establishing that the person will not flee or pose a danger to any other person or to the community *rests with the person*." Fed. R. Crim. P. 32.1(a)(6)(emphasis added) Thus, considering this burden on a defendant, a mere allegation of a violation of the conditions of a stand-alone sentence of probation may result in the immediate deprivation of that defendant's liberty.

[2]The Maryland Code provides that "[i]f a defendant is brought before a circuit court to be sentenced on the original charge or for violating a condition of probation . . . the judge may sentence the defendant to (i) all or any part of the period of imprisonment imposed in the original sentence; or (ii) any sentence allowed by law, *if a sentence was not imposed before*[.]" Md. Code Ann. Crim. Law §6-224(b) (2002) (emphasis added).

tion that has never been subjected to 'the crucible of meaningful adversarial testing[.]'" *Shelton*, 535 U.S. at 667 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). Applying this standard, I fail to see how a set term of potential imprisonment differs, other than in form, from exposure to a variable term of potentially harsher imprisonment. In both systems, the die is cast; the vulnerability of the defendant to imprisonment is set in concrete, and this original determination *may not be revisited*.

## II.

The issue presently on appeal was recently raised in the Fifth Circuit. Our sister circuit found the distinction between the potential future activation of a set sentence and the potential future imposition of "any punishment" to be material. *United States v. Perez-Macias*, 335 F.3d 421, 426 (5th Cir. 2003), *cert. denied* 124 S. Ct. 495 (2003) ("A suspended sentence is conceptually different from a sentence of probation."). Moreover, the Fifth Circuit did "not believe that the logic of *Shelton* compels extension of the right to counsel to cases where the defendant receives a sentence of probation uncoupled with a suspended sentence." *Id.* at 427. According to the Fifth Circuit, the actual imprisonment rule from *Scott* was, in reality, an actual receipt of a sentence of imprisonment rule. *See id.* (citing, *inter alia*, *Scott*, 440 U.S. at 374). Because the imposition of a stand-alone sentence of probation is not a sentence of imprisonment, the Fifth Circuit was able to "find the answer clear." *Id.* at 428.

Unfortunately, I am not able to find the answer to be so clear. A careful reading of the phrase "actual imprisonment" as applied in *Shelton* leads to the conclusion that the Sixth Amendment protection is triggered whenever a sentence is imposed that leaves a defendant *vulnerable* to "actual imprisonment." The Government rejects this second interpretation of "actual imprisonment" by pointing to language in *Scott* where the Court states that "the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines *or the mere threat of imprisonment*—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Scott*, 440 U.S. at 373 (emphasis added). My disagreement with the reliance on this language is twofold.

First, the *Shelton* decision, although applying that standard, did not remain true to the literal meaning of those words, instead engrafting a "vulnerability" qualifier on the "actual imprisonment" rule. *See Shelton*, 535 U.S. at 674 ("Satisfied that Shelton is entitled to appointed counsel at the critical stage when his guilt or innocence of the charged crime is decided and his vulnerability to imprisonment is determined, we affirm the judgment of the Supreme Court of Alabama."). In fact, four members of the Court concluded that the *Shelton* majority had abandoned the "actual imprisonment" rule altogether and "extend[ed] the misdemeanor right to counsel to cases bearing the mere threat of imprisonment." *Shelton*, 535 U.S. at 675 (Scalia, J. dissenting).

Second, the issue in *Scott* was whether the Sixth Amendment right to counsel attaches when a defendant has violated a state statute "for which imprisonment upon conviction is authorized but not actually imposed[.]" *Scott*, 440 U.S. at 369 (citing *People v. Scott*, 68 Ill. 2d 269, 272 (1977)). The "threat of imprisonment" in *Scott* evaporated once the judge sentenced the defendant to a mere $50 fine. In stark contrast, the "threat of imprisonment" in cases where stand-alone probation sentences are imposed continues until the termination of the probation period. Thus, interpolating the language regarding the threat of imprisonment from *Scott* into the current controversy as a means of distinguishing suspended sentences from stand-alone sentences of probation is not persuasive. More significant to me is the inescapable reality that perpetuating this distinction, in light of the Supreme Court's underlying rationale, would result in a triumph of form over substance.

The Court's actual reasoning in *Shelton* militates against the Government's view that the distinction between suspended sentences and stand-alone sentences is material. The rationale for *Shelton* was that the Sixth Amendment guarantees the right to counsel to a defendant whose original sentence can, at some future date and upon violation of a condition of probation, result in incarceration; not immediate incarceration, but potential future incarceration. Applying this rationale to the current case, Pollard's original sentence of probation, upon violation of a condition of probation, could land him in jail. Therefore, regardless of the semantic differences between state suspended sentences and federal stand-alone sentences of probation, the underly-

ing rationale of *Shelton* convinces me that the differences are not enough to justify drawing such a bright constitutional line. *Vulnerability to actual imprisonment* is finally determined under both schemes at the time of the original sentence.

III.

The Majority notes its recognition of the potential Sixth Amendment violation that could result upon imposition of a prison sentence at a probation revocation proceeding. Maj. Op. at 7-8. However, my colleagues decline to consider the Sixth Amendment issue because "Pollard was not sentenced to imprisonment after violating probation[.]" *Id*. Although I agree that this Court is obliged to consider solely the facts of the case presently before it, I respectfully cannot agree that the magistrate judge's decision to continue probation, J.A. 180, allows this Court to avoid deciding the constitutional issue. Indeed, a review of Alabama's unsuccessful argument in *Shelton* explains why the magistrate judge's decision not to incarcerate Pollard when he violated terms of his probation does not prevent this Court from resolving the constitutional question.

In *Shelton*, the Court noted that "Alabama now concedes that the Sixth Amendment bars *activation* of a suspended sentence for an uncounseled conviction, but maintains that the Constitution does not prohibit *imposition* of such a sentence as a method of effectuating probationary punishment." *Shelton*, 535 U.S. at 660-61. Presumably, Alabama Attorney General (now Circuit Judge) Pryor made this concession to better his chances of success on the narrow issue before the Court. The Court, however, rejected the argument that the Sixth Amendment is triggered only upon activation of the suspended sentence. *See id*. at 667 ("Severing the analysis in this manner makes little sense. One cannot assess the constitutionality of imposing a suspended sentence while simultaneously walling off the procedures that will precede its activation.").

The dissenting opinion in *Shelton*, in line with the Majority opinion in this case, argued, as did Alabama, that the Sixth Amendment right is triggered only upon activation of a suspended sentence. *See Shelton*, 535 U.S. at 676 (Scalia, J. dissenting)("In the future, *if and when* the State of Alabama seeks to imprison respondent on the previously

suspended sentence, we can ask whether the procedural safeguards attending the imposition of that sentence comply with the Constitution."). We are bound to follow the majority opinion of the Supreme Court in *Shelton*, and I fail to understand how the rejected rationale of the dissenters in that case can serve as a basis for our avoidance of the issue that we all agree would be unavoidable if Pollard had been imprisoned. The issue was not avoided in *Shelton* when he was not imprisoned, nor should it be here.

There is no reason why the Court's logic in *Shelton* should not control the outcome of this case. The Supreme Court was unconvinced that Shelton's Sixth Amendment right to counsel would be triggered only when his sentence evolved from suspended to activated. In the current case, the federal sentence of stand-alone probation subjected the defendant to potential imprisonment contingent only on the occurrence of a future event, *i.e.* an act in violation of probation. It is the imposition of the original sentence of probation leaving the Defendant vulnerable to future actual incarceration that triggers Pollard's Sixth Amendment right to counsel. *Shelton*'s determination, that the Sixth Amendment protects defendants when a judicial determination is made that could end up in the deprivation of that person's liberty, applies to the current situation just as it applies to the situation in *Shelton*. That determination also forecloses the Majority's argument that there is only a Sixth Amendment concern when a Court places the defendant behind bars after a probation revocation proceeding. Succinctly stated, an argument rejected by the Supreme Court in *Shelton* cannot be resuscitated here.

### IV.

As *Shelton* clearly holds, the Sixth Amendment right to counsel attaches not upon activation of a suspended prison sentence, but rather upon the original imposition of a sentence which could result in the deprivation of liberty. Put another way, *Shelton* teaches that it is the final determination of *vulnerability* to imprisonment that triggers the Sixth Amendment protection.

In the case presently before this Court, the defendant never spent time in prison, although upon violation of his probation it was within the magistrate judge's discretion to send Pollard to prison. The stated

reason for the magistrate judge's conclusion that prison time was not an option brings to light an additional policy rationale for reversing the lower court's decision on the basis of the holding in *Shelton*.[3]

At a hearing on the Defendant's Motion to Dismiss on January 28, 2003, the magistrate judge immediately stated that "the Court cannot send Mr. Pollard to jail for violating his probation because he was not represented and did not waive his right to counsel at the plea[.]" J.A. 154. This statement epitomizes the undesirable consequences for the criminal justice system that could result from continuing to permit the imposition of probationary sentences without counsel: magistrate and district judges may be constrained from doing that which a rational system dictates should be done, namely revoking probation and imposing, where appropriate, a prison term because of the defendant's violation of the trust placed in him in the original probationary disposition.

In some instances, a defendant's probationary violation may not be sufficiently severe to make appropriate a term of imprisonment. However, under the regime that will result if we affirm, even if a defendant's violation of probation is egregious, courts will be hesitant, and rightly so, to sentence that person to prison when the stand-alone sentence of probation was imposed without the benefit of counsel. If the defendant is provided counsel at the original hearing when that defendant is convicted and receives a sentence of probation, then the magistrate or district judge, without fear of a Sixth Amendment violation, will be free to determine the appropriate penalty at a probation revocation proceeding consistent with rational sentencing practices.

Concern has been expressed that requiring counsel for defendants who face any penalty other than a fine would place insurmountable burdens on the court system. As a district judge, I believe that the justice system is harmed considerably more by effectively eliminating magistrate and district judge discretion to impose prison terms on

---

[3]A consideration of the policy ramifications of this decision is necessary in this case, as it is apparent that such considerations also affected the decision-making process in *Shelton*. *See Shelton*, 535 U.S. at 665-72 (considering the effect that the decision will have on state criminal systems and also indicating options consistent with the Constitution).

wayward probationers, than the detriment that would occur if we were to conclude that counsel must be appointed to represent indigent defendants who face sentences of probation. Moreover, the predicted harm to the judicial system can be avoided in numerous ways discussed in *Shelton*, *e.g.* legislation and/or rules changes that would permit pre-trial probation[4] or automatic *de novo* review at a probation revocation proceeding where there has been an uncounseled conviction.

When assessing the consequences of a judicial determination that the Sixth Amendment right to counsel applies to indigent federal defendants sentenced to stand-alone probation, I conclude that the benefits far outweigh the putative detriments. Permitting a court to freely exercise its discretion (ostensibly granted to it by 18 U.S.C. § 3565) to incarcerate defendants who have violated the conditions of their probation advances the goals of the federal criminal justice system. Judges will no longer fear a constitutional violation for exercising their judgment in a manner consistent with the laws of the United States. *See* 18 U.S.C. § 3565 ("If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may . . . revoke the sentence of probation and resentence the defendant under subchapter A."). The alleged negative impact on the judiciary can be alleviated through the means discussed above. Thus, while the benefits of applying the Sixth Amendment right to counsel to sentences of probation cannot be overstated, the detriments can be avoided through relatively simple legislative and rules changes.

---

[4]Under such an arrangement, the prosecutor and defendant agree to the defendant's participation in a pretrial rehabilitation program, which includes conditions typical of post-trial probation. The adjudication of guilt and imposition of sentence for the underlying offense then occur only if and when the defendant breaches those conditions." *Shelton*, 535 U.S. at 671. As to this option, the Court "entertain[s] no constitutional doubt." *Id*. at 668 n.5.