David A. GITLITZ, individually and derivatively on behalf of Erie Commons Investors, LLC; Erie Corporate Investors, LLC; Section 4 Investors, LLC; Tallgrass Investors, LLC; Austin Avenue Investors, LLC; Mason Street Investors, LLC; Sweetgrass Investors, LLC; Dacono Properties, LLC; Briggs Street Investors, LLC; Community Development Group of Erie, Inc.; and Dacono Development Company, Inc., Plaintiffs–Appellants,

v.

Charles R. BELLOCK; Chuck Bellock Construction Inc., d/b/a Bellock Construction Inc.; Lewis G. Holtsclaw, individually and as trustee of the G. Holtsclaw Living Trust; Alan B. Lottner; and Lottner, Rubin, Fishman, Brown & Saul, P.C., Defendants–Appellees.

No. 06CA1313.

Colorado Court of Appeals, Division II.

Oct. 4, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

Don, Galleher & Saliman, P.C., Shelley B. Don, Watson W. Galleher, Mark E. Saliman, Denver, Colorado, for Plaintiffs–Appellants.

Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Michael S. Burg, Diane Vaksdal Smith, Englewood, Colorado, for Defendants–Appellees.

Opinion by Judge ROMÁN.

Plaintiffs, David A. Gitlitz, individually and derivatively on behalf of Erie Commons Investors, LLC; Erie Corporate Investors, LLC; Section 4 Investors, LLC; Tallgrass Investors, LLC; Austin Avenue Investors, LLC; Mason Street Investors, LLC; Sweetgrass Investors, LLC; Dacono Properties, LLC; Briggs Street Investors, LLC; Community Development Group of Erie, Inc.; and Dacono Development Company, Inc., appeal the order denying their motion for a preliminary injunction against defendants, Charles R. Bellock; Chuck Bellock Construction, Inc., d/b/a Bellock Construction, Inc.; Lewis G. Holtsclaw, individually and as trustee of the Lewis G. Holtsclaw Living Trust; Alan B. Lottner; and Lottner, Rubin, Fishman, Brown & Saul P.C. We vacate the district court's order and remand the case with directions.

## I. Background

### A. General Corporate Structure

Plaintiff David A. Gitlitz and defendant Charles R. Bellock are involved in the business of commercial and noncommercial real estate acquisition, development, and resale. Beginning in February 2001, Gitlitz and Bellock incorporated various land-investment limited liability companies (LLCs) for the purpose of holding real estate properties. A development group, Community Development Group of Erie, Inc. (CDGE), was then incorporated for the purpose of contracting with third parties for the purchase of real estate in the various LLCs. CDGE would then act as the development company of the real estate purchased by the third parties.

Operating agreements for the respective LLCs governed the corporate structure and management of the LLCs. Each operating agreement for the LLCs at issue named only Gitlitz and Bellock as the managers of the LLCs. Furthermore, the operating agreements provided that Gitlitz and Bellock were each forty-nine percent contributing members in most of the LLCs at issue.

## B. The Dispute

Concurrently with their complaint, plaintiffs filed a motion for a temporary restraining order (TRO) against defendants, alleging, in part, that Bellock's course of conduct regarding management of the various LLCs—namely, the alleged improper election of a third manager—had diluted Gitlitz's management and control rights under the respective operating agreements governing the LLCs.

At issue at the time of plaintiffs' motion for a TRO was a potential contract, worth over $40 million to the entities, between CDGE and a third party, Newland Communities, LLC, for the purchase and development of the real estate in several LLCs of which Gitlitz was a manager and contributing member. Acting in his capacity as elected manager of the LLCs, Jon Lee, a third manager, entered into contractual negotiations with Newland without Gitlitz's knowledge or consent. Because of this and other actions, plaintiffs sought to restrain defendants from engaging in further conduct that would be detrimental to plaintiffs' interests.

## C. District Court Ruling

The court initially granted plaintiffs' TRO motion, restraining defendants from taking any further managerial action regarding the LLCs without plaintiffs' consent. Defendants subsequently filed an emergency motion to dissolve the TRO, arguing, in part, that the TRO erroneously placed the Newland contractual negotiations in serious jeopardy. The district court held a three-day evidentiary hearing on the TRO. The court ordered that the TRO would remain in place until the parties could brief the court on the issues for a preliminary injunction.

Thereafter, plaintiffs filed a motion for a preliminary injunction, alleging that, inter alia, (1) defendants improperly elected a third manager of the LLCs; and (2) the improper election diluted Gitlitz's management and control rights in the respective LLCs, which constituted irreparable harm.

The district court held a hearing on the TRO issues as well as on plaintiffs' preliminary injunction motion, at which time neither party presented evidence. Instead, counsel for both parties argued their respective positions concerning whether loss of management and control rights constituted irreparable harm.

At the conclusion of the hearing, the district court ruled on plaintiffs' request for injunctive relief as follows:

> The Court makes the following findings by a preponderance of the evidence: In answer to the questions was there a real, immediate and irreparable harm, the answer is no. Was there an adequate, plain—plain, speedy and adequate remedy at law? Yes, there is. Would an injunction—entry of an injunction preserve the status quo, the answer is you [sic]. It is therefore ordered that the temporary injunction, or preliminary injunction, or whatever it is, is lifted [and] the bond is discharged....

In a minute order, the court held that plaintiffs had not demonstrated imminent irreparable harm or lack of an adequate remedy at law, and therefore it vacated the "injunctive relief previously ordered."

This appeal followed.

## II. Procedural Posture on Appeal

■ At the outset, we note that the district court's verbal order and minute order from May 10, 2006 recite denial only of the "injunctive relief previously ordered" (that is, the TRO) and do not employ language that specifically denies the motion for preliminary injunction, which denial plaintiffs now appeal. However, because the court employed the C.R.C.P. 65 discretionary standards applicable to preliminary injunctions in reaching this result, we will treat the court's order as denying plaintiffs' motions for temporary restraining order and preliminary injunction. *See Kourlis v. Dist. Court,* 930 P.2d 1329, 1332–33 (Colo.1997) (court's order denying only the temporary restraining order under C.R.C.P. 65 standards is construed as an order also denying the preliminary injunction).

In making this determination, we are influenced not only by the court's use of the C.R.C.P. 65 factors but also in that (1) at the conclusion of the TRO evidentiary hearings,

the court required defendants to brief "the precise language of the findings on all of the six factors for a preliminary injunction"; (2) the court opined at the hearing that the TRO and preliminary injunction motion had "morphed"; (3) the minute order refers to the TRO as the "temporary restraining order/preliminary injunction"; (4) the court held a later-filed motion on the preliminary injunction issue "moot"; and (5) defendants concede in their answer brief that the substance of the hearing was the motion for preliminary injunction.

### III. Preliminary Injunctive Relief

#### A. Standard of Review

■ A trial court's ruling on a motion for preliminary injunction should be reviewed with deference and will not be overturned unless it is manifestly unreasonable, arbitrary, or unfair. *State ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161, 164 (Colo. 2001). If only legal, rather than factual questions are at issue, we review the district court's preliminary injunction ruling de novo. *See id.*

#### B. The *Rathke* Factors

■ A preliminary injunction is designed to preserve the status quo or protect a party's rights pending the final determination of a cause. *City of Golden v. Simpson*, 83 P.3d 87, 96 (Colo.2004). Its purpose is to prevent irreparable harm prior to a decision on the merits of a case. *See id.*

■ In considering a motion for a preliminary injunction, the trial court must find that the moving party has demonstrated (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) lack of a plain, speedy, and adequate remedy at law; (4) no disservice to the public interest; (5) balance of equities in favor of the injunction; and (6) preservation by the injunction of the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982). If each criterion is not met, injunctive relief should not be granted. *Id.* at 654.

■ In granting or refusing interlocutory injunctions, the trial court must set forth the findings of fact and conclusions of law that constitute the basis for its action. *See* C.R.C.P. 52. The purpose of the rule is to give the appellate court a clear understanding of the grounds for the trial court's decision. *Am. Nat'l Bank v. Quad Constr., Inc.*, 31 Colo.App. 373, 379, 504 P.2d 1113, 1116 (1972).

Plaintiffs' primary contention on appeal is that the district court erred in concluding that they have not demonstrated irreparable harm for purposes of a preliminary injunction. Specifically, plaintiffs argue that loss of a contractual right to share in the control and management of a business constitutes irreparable harm.

Review of the record demonstrates that plaintiffs attempted at the evidentiary hearings to present expert testimony regarding interpretation of the LLC operating agreements. Specifically, plaintiffs' proposed expert testimony sought to explicate the proposition that loss of contractual management rights constitutes irreparable harm.

During the subsequent preliminary injunction hearing, plaintiffs' counsel again attempted to expound on this legal proposition, specifically citing as support *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir.2003).

Based on our review of the record, however, we are unable to determine whether the district court's finding that plaintiffs failed to establish irreparable harm is the result of a rejection of case law in support of plaintiffs' irreparable harm proposition or whether it is the result of a lack of evidence. A remand for further findings and conclusions is therefore necessary.

Because the court may have decided the issue solely on its view of the law, the issue may arise on remand. Accordingly, we will address the legal analysis to be employed on remand. We now address plaintiffs' irreparable harm argument.

#### C. Irreparable Harm

■ "Irreparable harm" is a pliant term adaptable to the unique circumstances

that an individual case might present. *See State Comm'n on Human Relations v. Talbot County Detention Ctr.*, 370 Md. 115, 803 A.2d 527, 542 (2002). Generally, irreparable harm has been defined as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import*, 339 F.3d at 113; *see also Aquila, Inc. v. Quanta Servs., Inc.*, 805 A.2d 196, 209 (Del. Ch.2002); *Subcarrier Commc'ns, Inc. v. Day*, 299 N.J.Super. 634, 691 A.2d 876, 878 (Super.Ct.App.Div.1997); *475 Ninth Ave. Assocs. LLC v. Bloomberg*, 2 Misc.3d 597, 773 N.Y.S.2d 790, 800 (Sup.Ct.2003). Thus, as a corollary, an injunction is available as equitable relief if there is no legal remedy that provides full, complete, and adequate relief. *See El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36, 39–40 (Del.1995). An injury may be irreparable, therefore, where monetary damages are difficult to ascertain or where there exists no certain pecuniary standard for the measurement of the damages. *See El Bey v. Moorish Science Temple of Am., Inc.*, 362 Md. 339, 765 A.2d 132, 140 (2001).

Whether loss of contractual rights to manage a business constitutes irreparable harm is an issue of first impression in Colorado. In this situation we may look to the courts of other jurisdictions for guidance. *See USA Tax Law Ctr., Inc. v. Office Warehouse Wholesale, LLC*, 160 P.3d 428, 431 (Colo.App. 2007).

The United States Court of Appeals for the Second Circuit has held that loss of contractual management rights may constitute irreparable harm. *See generally Wisdom Import*, 339 F.3d 101.

In *Wisdom Import*, a minority-interest holder in a beer distribution enterprise had, pursuant to a contractual agreement, bargained for a supermajority vote giving it veto power over "fundamental matters" related to the enterprise. *See id.* at 104–05. The beer distribution enterprise sought, upon resolution by its board of directors, to enter into an agreement with a brewing company for the integration of a new brand of beer into its distribution scheme. Prior to a vote on the proposed integration agreement, the minority-interest holder argued that such business conduct constituted a "fundamental matter" and therefore, pursuant to the enterprise's corporate governance structure, required a supermajority vote. *See id.* at 106–07. The minority-interest holder voted against the integration agreement; however, the enterprise proceeded with the integration on a simple majority vote and not the required supermajority vote. *See id.*

The *Wisdom Import* court found that the enterprise, in proceeding with a new integration agreement in disregard of the minority-interest holder's veto vote, breached the corporate governance agreement. *See id.* at 113–14. The court held that the breach *itself* constituted an irreparable harm warranting injunctive relief. *See id.* at 113–15.

The court reasoned as follows:

Wisdom's right to participate in the management of [the enterprise] has *intrinsic value*. It derives its value as a trump card of sorts, available to Wisdom as a check ... to preserve the balance of power in the joint venture.... Wisdom expressly negotiated for and received the right to veto certain transactions with which it disagreed before those transactions commenced, a right that is irretrievably lost upon breach, and may not be compensable by non-speculative damages.

*Id.* at 114 (emphasis added).

The *Wisdom Import* court also held that a "bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." *Id.* at 115. Moreover, the loss of the minority-interest holder's right to exercise its veto power constitutes a separate and distinct harm that may not be adequately remedied by a monetary award. *See id.; see also Bray v. QFA Royalties LLC*, 486 F.Supp.2d 1237, 1248 n. 6 (D.Colo.2007)(citing *Wisdom Import* for the proposition that money damages are an inadequate remedy for the loss of a contractual right to control a business).

The rule of *Wisdom Import* has been applied in other business contexts. *See, e.g., Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F.Supp.2d 491 (S.D.N.Y.2006)(dilution of a party's loss of

control or influence of a business is irreparable harm), *aff'd,* No. 05–2862–CV–L, 2007 WL 2492139 (2d Cir.2007) (not selected for publication); *Woods v. Boston Scientific Corp.,* 2006 WL 4495530 (S.D.N.Y.2006)(magistrate's recommendation)(loss of right to joint management by erroneous replacement of CEOs is irreparable harm), *adopted,* No. 06 Civ. 5380(AKH), 2006 WL 4495530, 2007 WL 754093 (S.D.N.Y.2007); *Canwest Global Commc'ns Corp. v. Mirkaei Tikshoret Ltd.,* 9 Misc.3d 845, 804 N.Y.S.2d 549 (Sup.Ct. 2005)(loss of right to participate in management of a business is irreparable harm).

■ Defendants have provided us with no authority to the contrary, and we have found none. Accordingly, we are persuaded by *Wisdom Import* and its progeny and conclude that loss of a contractual right to manage and control a business may constitute irreparable harm; that monetary damages are an inadequate remedy for such a loss; and that a contractual right to participate in the management and control of a business has intrinsic value in and of itself that may not be adequately compensated by monetary damages.

[13] Here, plaintiffs allege that the election of a third manager to the various LLCs has diluted plaintiffs' bargained-for contractual management rights of the LLCs. Whether a third manager was elected improperly

pursuant to the operating agreements requires both contractual interpretation of the operating agreements and fact finding by the district court. However, because the district court did not make factual findings, we take no position on this issue.

Instead, we direct the district court to make factual findings, consistent with the reasoning in *Wisdom Import,* on (1) whether plaintiffs can establish irreparable harm, and (2) whether plaintiffs can establish that there is no adequate remedy at law.

Should the district court find that plaintiffs have satisfied both of these criteria, then it should proceed to consider, and make applicable findings, as necessary, on the remaining *Rathke* preliminary injunction factors. *See Rathke,* 648 P.2d at 653–54.

The order is vacated, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge CASEBOLT and Judge KAPELKE *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.